UNITED STATES of America and Joseph J. Boyle, Special Agent, Internal Revenue Service, Plaintiffs,

v.

FIRST PENNSYLVANIA BANK and Frances Berko, Custodian of Records of the First Pennsylvania Bank, Defendants,

and

Daniel J. Callahan, (Intervenor) Intervenor-Taxpayer.

Civ. A. No. 77–1712.

United States District Court, E. D. Pennsylvania.

June 14, 1978.

Joseph M. Gontram, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Thomas J. Elliott, Philadelphia, Pa., for defendants.

Daniel J. Callahan, pro se.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This is a proceeding instituted by a complaint filed by the Internal Revenue Service (IRS) to enforce a summons served on the defendant, First Pennsylvania Bank (Bank),[1] calling for the production of specified books and records concerning the tax liability of Daniel J. Callahan (Mr. Calla-

---

1. This summons was also served on Frances Berko, the Bank's Custodian of Records. A second IRS summons was served on Mr. Callahan's other bank, Fidelity Bank, which voluntarily complied with the request.

2. At the time the bank received the IRS summons, it notified Mr. Callahan that it would comply with the request unless he obtained a restraining order. Mr. Callahan filed a *pro se*

han) for the years 1973 and 1974.[2] A show cause hearing was held on July 28, 1977, at which time Mr. Callahan filed a *pro se* motion to intervene. This Court granted the taxpayer's motion to intervene for the purpose of affording him an opportunity to set forth his reasons for claiming that his constitutional rights would be violated if the summons was enforced. After receiving briefs and affidavits from Mr. Callahan and the IRS, the Court determined that an additional hearing should be held so that Mr. Callahan could present evidence supporting his allegations. This hearing was held on January 25, 1978. The bank advised the Court that it had no objection to the summons. The Court has reviewed the briefs filed by Mr. Callahan and the IRS and the evidence presented, and, for the reasons hereinafter set forth, has concluded that enforcement of the summons will be ordered.

The IRS contends that it has met its burden of showing that its investigation of Mr. Callahan has been conducted for a legitimate purpose, that the material requested in the summons is relevant to this purpose, that the information sought is not already within the possession of the IRS, and that the administrative steps required by the Code have been followed.

Mr. Callahan opposes enforcement of the summons on the grounds that (1) the IRS already has all of the requested information in its possession; (2) the IRS is attempting to use the Court's civil process to harass him; (3) the summons was issued after a recommendation of criminal prosecution had been made; (4) enforcement of the summons would violate his Fourth and Fifth Amendment rights; (5) the summons is invalid because it is an attempt to obtain evidence for a criminal prosecution; and (6)

---

petition to restrain the Bank from complying with the summons. On November 23, 1976, Judge Luongo ordered that the Bank be restrained "until an order of compliance in enforcement proceedings had been entered by a court of competent jurisdiction." *Callahan v. First Pennsylvania Bank*, 422 F.Supp. 1098, 1100 (E.D.Pa.1976).

the summons is overbroad in scope. In connection with these allegations, Mr. Callahan has filed a motion to compel the IRS to produce all the documents, records, and papers relating to its investigation of him. He contends that he needs these documents and records in order to establish the allegations which he has made in this proceeding. In addition, prior to the January 25, 1978 evidentiary hearing, Mr. Callahan served subpoenas duces tecum on IRS Agent Gudknecht and Assistant United States Attorney Gollatz, requiring their testimony and the production of the IRS's investigative files on Mr. Callahan. The IRS responded by filing motions to quash the Gudknecht and Gollatz subpoenas. Thus the question of whether Mr. Callahan is entitled to such discovery is clearly presented.

At the show cause hearing on July 28, 1977, the IRS presented the testimony of IRS Special Agent Boyle in order to establish its claim that the summons issued by the IRS should be judicially enforced. Agent Boyle testified that prior to the time the subpoena was issued, he had been conducting a routine investigation of the federal tax liabilities of Mr. Callahan for the years 1973 and 1974 to determine if there had been violations of the Internal Revenue Code. In connection with this investigation, Agent Boyle served a summons on the Bank, which requested certain of the Bank's financial records relating to Mr. and Mrs. Callahan. The agent testified that these documents were to be used to determine if there was tax liability in Mr. Callahan's case. The witness stated that the IRS had requested certain tax information from Mr. Callahan, and that Mr. Callahan refused to cooperate. Mr. Callahan initiated a trespass action in the state court against the IRS agents who came to his house because they had not telephoned him before coming, and had ignored the "no trespass" signs posted at his home. It was further testified that Mr. Callahan declined to provide Agent Boyle with his financial records, which had been requested in writing. Agent Boyle also testified that at the time the subpoena was issued, he had not formed an intention to recommend a criminal prosecution of Mr. Callahan. Mr. Callahan then cross-examined Agent Boyle.

At the hearing on January 25, 1978, Mr. Callahan stated that he had no evidence to support his contention that the IRS's purpose was improper. He said that he might be able to find such evidence in the IRS's files. He testified that on August 24, 1976, IRS Agents Gudknecht and Boyle came to his house, and he told them that he would not talk to them unless they first made an appointment to see him. He explained that he was concerned because the agents had disregarded the "no trespass" signs which he had posted on his property. He said that one week later Mr. Boyle returned to his house without first telephoning, and that he was not at home. He testified that because the IRS agents did not obey his posted "no trespass" warnings and his verbal notices to refrain from coming to his door without an appointment, he filed a trespass action against them in the state court.

Mr. Callahan also stated that when he had an interview in Norristown with another IRS agent in connection with a payroll tax matter, Agent Boyle came into the room. Mr. Callahan explained that he thought this was done to surprise him, and that after Agent Boyle's appearance, the other agent's attitude toward him changed and he began to ask "demeaning questions". At that meeting, Mr. Callahan again told Agent Boyle that he would be glad to speak with him if he telephoned for an appointment.

Mr. Callahan then related that the IRS began investigating his two banks, his suppliers and others; that an interview for October 11, 1976, Columbus Day, was scheduled but the agent did not keep the appointment; that he told the agent that before he would talk to him, the IRS would have to stipulate that nothing it found would be used against him in any criminal action; and that an IRS agent would have to answer his questions under the Freedom of Information Act. Mr. Callahan observed that the IRS agents investigating his case had been throwing their weight around, and that he did not receive courteous treat-

ment. Mr. Callahan concluded his testimony by stating that he was a member of two taxpayers' organizations, Americans for Constitutional Taxation, and the Pennsylvania Conservative Union, and that between 25% and 50% of the members of these two organizations have been audited by the IRS.

Title 26 U.S.C. § 7602 authorizes the IRS to issue summonses "for the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability * * * at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability . . . ."

■■■■ As pointed out by Chief Judge Seitz in *United States v. McCarthy*, 514 F.2d 368, 372 (3d Cir. 1975):

> Under *Powell*, however, the abuse of process issue is only reached after the government has made a preliminary showing in support of the summons. In *Powell*, the Supreme Court held that the government must show: (1) that the investigation has a legitimate purpose and that the inquiry may be relevant to that purpose, (2) that the information sought is not already within the government's possession and (3) that the steps required by the Internal Revenue Code have been followed—"in particular that the 'Secretary or his delegate,' after investigation, has determined the further examination to be necessary and has notified the tax payer in writing to that effect." [*U. S. v.*] *Powell*, 379 U.S. [48] at 58, 85 S.Ct. [248] at 255. [13 L.Ed.2d 112].

On the basis of the evidence produced by the Government at the show cause hearing, we find that the IRS has established all the requisite elements enumerated in *McCarthy*.

■■■■ Mr. Callahan, the intervenor, seeks to prevent enforcement of the IRS summons on the grounds that: (1) the IRS already possesses the material it seeks to obtain; (2) the IRS is using the Court's civil process to harass him; and (3) the summons was issued after criminal prosecution had already been recommended. Our Third Circuit in *Gannet v. First National Bank of New Jersey*, 546 F.2d 1072, 1077 n. 9 (3d Cir. 1976), said:

> [t]he burden of showing an improper purpose in issuing an Internal Revenue Service summons is on the taxpayer. *Donaldson v. United States*, 400 U.S. 517, [91 S.Ct. 534, 27 L.Ed.2d 580] (1971).

Having considered all the evidence presented to the Court in this matter, the Court finds that Mr. Callahan, the intervenor, has failed to carry his burden of showing any of the following: (1) that the IRS already possessed the material sought by the summons, (2) that the IRS is using the process to harass him, and (3) that the summons was issued for criminal purposes. No evidence was presented to show that the information sought was already within the IRS's possession. Likewise, no evidence was presented to show that the summons was issued for criminal purposes.[3]

In connection with his claim of harassment, Mr. Callahan testified that he is a member of two taxpayers' organizations, Americans for Constitutional Taxation and the Pennsylvania Conservative Union, and that between 25% and 50% of the members of these two organizations have been audited by the IRS. This unsubstantiated broad allegation was the only evidence of harassment offered by Mr. Callahan. The court finds, therefore, on the basis of the evidence presented at both hearings that the IRS, pursuant to its routine procedures, determined to investigate Mr. Callahan's tax liability for the years 1973 and 1974, and that it was because of Mr. Callahan's failure to cooperate in providing necessary information that the summons was served on

---

**3.** As pointed out by our Third Circuit in *United States v. Fisher*, 500 F.2d 683, 687 (3d Cir. 1974), *aff'd*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976):

> It is now well settled that the possibility that criminal prosecution as well as civil liabilities may arise from a tax investigation is not a sufficient ground for refusing to enforce a summons issued under Section 7602 in good faith and prior to a recommendation for prosecution.

the Bank. This purpose is authorized under 26 U.S.C. § 7602, and is an investigation which has a legitimate purpose.

■ Mr. Callahan also contends that his Fourth and Fifth Amendment rights would be violated if the Bank's records were turned over to the IRS. In *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) and *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), the United States Supreme Court held that a taxpayer's interest in documents relevant to his financial affairs in the possession of his bank or accountant is not protected by either the Fourth Amendment (*Miller*, 425 U.S. at 443, 96 S.Ct. 1619) or by the Fifth Amendment (*Couch*, 409 U.S. at 336, 93 S.Ct. 611). Therefore, the enforcement of the summons in this case is "governed by the general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of [the taxpayer] . . . ." *Miller*, 425 U.S. at 444, 96 S.Ct. at 1624.

■ Mr. Callahan also contends that the summons is overbroad in scope. Since the summons was directed to the Bank and not to Mr. Callahan, it would appear that he lacks standing to question the breadth of the summons. Nevertheless, we have considered the objection and find that the summons is not overbroad. We observe that the summons enforced by the Supreme Court in *Miller* and the summons enforced by the Supreme Court in *Couch* contain almost identical language as the summons in the instant case i. e., "[a]ll records in [Bank's] possession or under [its] control relating to the . . . taxpayer . . . ."

■■ Finally, we consider whether the Court should grant Mr. Callahan's motion to compel the IRS to produce all its documents, records and papers relating to its investigation of him; and whether we should deny the IRS's motion to quash the subpoenas duces tecum filed on Agent Gudknecht and Assistant United States Attorney Gollatz requiring them to testify and produce the IRS's files on Mr. Callahan. In contrast to the procedure in ordinary civil cases, discovery in a summary summons enforcement proceeding is the exception rather than the rule. The party resisting enforcement is required to do more than allege an improper purpose before discovery is granted. Some evidence supporting his allegation must be introduced. *United States v. Church of Scientology of California*, 520 F.2d 818, 824 (9th Cir. 1975); *United States v. McCarthy*, 514 F.2d 368, 373, 376 (3d Cir. 1975); *United States v. Turner*, 480 F.2d 272, 275–76 (7th Cir. 1973); *United States v. Salter*, 432 F.2d 697, 700 (1st Cir. 1970). As the First Circuit stated in *Salter*, 432 F.2d at 700:

> the district court [should] proceed directly to a hearing at which, if desired, the summonee could examine the agent who issued the summons, concerning his purpose. The court could then, by observation, and where necessary, its own questioning of the agent, make its own determination of whether exploration, as by discovery, seemed to be in order.
>
> If, at the end of the hearing, there remains a substantial question in the court's mind regarding the validity of the government's purpose, it may then grant discovery.

Our Third Circuit set forth a procedure similar to that advocated in *Salter*, and Chief Judge Seitz suggested that this Court amend its local rules to establish such a procedure. Rule 47 of our Local Rules of Civil Procedure establishes the procedure which he recommended. Rule 47(d) provides:

> At the hearing upon the order to show cause, the Secretary or his delegate shall be prepared to prove the material allegations of the complaint. The person summoned may rebut the evidence offered by the Secretary or his delegate, and shall have the burden of proof with respect to any affirmative defenses raised in the motions or responsive pleading. If the interests of justice so require, the court may direct further proceedings in the matter, and may order such discovery as is permitted by law. At the conclusion of

the enforcement proceedings, the court shall make findings of fact and conclusions of law in conformity with Rule 52(a) of the Federal Rules of Civil Procedure.

In accordance with the findings of fact and conclusions of law heretofore set forth in this memorandum, the Court has determined, pursuant to Local Rule of Civil Procedure 47(d), that it is not in the interest of justice to proceed further in this matter and order discovery.

Accordingly, an Order will be entered denying Mr. Callahan's discovery motions, granting the IRS's motion to quash the subpoenas duces tecum and directing the enforcement of the IRS summons served on the Bank. This memorandum is in lieu of findings of fact and conclusions of law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.