**ST. GERMAN OF ALASKA EASTERN ORTHODOX CATHOLIC CHURCH, St. John of Rila Eastern Orthodox Monastery, Vatna Realty Corporation, Titchfield Realty Corporation, Glastonbury Estates, Inc., Kotel Realty Corp., Knutsford Realty Corporation, Batin Realty Corporation, Vidin Realty Corporation, and Graystoke Realty Corporation, 140 Main Street, Setauket, New York, Petitioners,**

v.

**UNITED STATES of America, Respondent.**

Nos. 85 Civ. 4603 (EW), 85 Civ. 5539 (EW), 85 Civ. 6315 (EW), 85 Civ. 7109 (EW) and 85 Civ. 9785 (EW).

United States District Court, S.D. New York.

Feb. 11, 1987.

Pepper, Hamilton & Scheetz, Philadelphia, Pa., David Richman, Alan K. Cotler, Sean P. Wajert, of counsel.

Herzfeld & Rubin, P.C., New York City, for petitioners.

Peter J. Kurshan, Rudolph W. Giuliani, U.S. Atty. for S.D.N.Y., New York City, for respondent; Mary Anne Wirth, of counsel.

EDWARD WEINFELD, District Judge.

Petitioners are a church, St. German of Alaska Eastern Orthodox Church (St. German), a monastery, St. John of Rila Eastern Orthodox Monastery (St. John), and their wholly owned real estate holding corporations.[1] Petitioners move to quash five IRS summonses, referred to as "third party recordkeeper summonses," 26 U.S.C. § 7609, served on their attorneys.[2] The summonses require production of all records and documents in the attorneys' possession that contain information concerning any real estate or other transactions conducted during the years 1980 through 1984 for the church's real estate corporations.

The IRS is conducting a civil and criminal investigation of Paul W.V. Ischie ("Ischie"), Right Reverend Archimandrite of St. German and abbot of St. John, to determine his correct income tax liabilities for 1980 through 1984 and to inquire whether he has committed any offenses under the Internal Revenue laws. The government states that petitioners are not presently the subject of a criminal or civil investigation.

Petitioners, however, argue that the government's investigation is actually directed at the church, and they seek to quash the summonses on essentially two grounds: (1) enforcement of the summonses would violate the First Amendment rights of the church, its members, and its contributors; and (2) the IRS is engaging in a bad faith investigation for the purpose of harassing Ischie and harming the church.[3] The government cross-moves to enforce the summonses and to dismiss the petitions for failure to state a claim upon which relief can be granted. The petitioners also move for limited discovery and to strike certain exhibits attached to a government affidavit.

## DISCUSSION

In opposing petitioners' motions to quash, the government relies primarily upon the affidavits of IRS Special Agent John Kees. Kees states that the purpose of the investigation is to determine Ischie's correct income tax liability and to inquire

---

1. Vatna Realty Corp., Titchfield Realty Corp., and Glastonbury Estates, Inc. in 85 Civ. 6315. Knutsford Realty Corp., Batin Realty Corp., Vidin Realty Corp., and Graystoke Realty Corp. in 85 Civ. 7109. Kotel Realty Corp. in 85 Civ. 9785. For uniformity, all citations to documents will be to those filed in 85 Civ. 9785.

2. Four of the five summonses were served on the law firm of Greenstien and Greenstein; the fifth on Dominick Massaro, Esq.

3. Petitioners also claim that some of the documents are protected by the attorney-client and work-product privileges, but these claims are not discussed in their papers save to state that they are not waived. *See Petitioners' Reply Brief* at 29 n. 12.

whether he has committed any offense connected with the administration or enforcement of the Internal Revenue Laws. Based on his investigation, Agent Kees has concluded that Ischie "may have engaged in a pattern of activity where he has solicited the donation of depressed real estate to petitioners St. John's and St. German's at an inflated value and a charitable deduction is taken by the donor at an inflated value, and the real estate is sold by St. John's and St. German's at a greatly reduced price."[4] Kees states that in such transactions Ischie has solicited the donations, recommended an appraiser to prospective donors, and sold the donated property.

■ Kees identifies several real estate transactions that he claims typify this pattern.[5] In particular, he details several transactions in which William Blackmore, an appraiser recommended to donors by Ischie, appraised the donated property both at the time of its donation to the church and at the time of its resale by the church. According to Kees, in one transaction involving Blackmore and Ischie, Blackmore appraised property for the donor as of December 21, 1980 as worth $905,250 and appraised it for Ischie as of June 23, 1981 as worth $98,500, with St. German selling the property on July 6, 1981 for $104,964. In another transaction, Blackmore appraised the property for the donor as of April 10, 1980 as worth $580,000, and appraised it for Ischie on July 5, 1980 as worth $47,775. In another instance, Ischie recommended Blackmore to donors and

Blackmore appraised their property as worth $662,500; the same property was independently appraised by the IRS as being worth about $50,000, the price at which St. German sold the property.[6] In sum, under this alleged scheme, the donors obtained sky-high deductions far beyond the true value of the properties donated.

Agent Kees states that his investigation has led him to believe that Ischie

may have aided and abetted the preparation of false income tax returns filed on behalf of the donors of these distressed properties or may have conspired with other individuals to impede the administration of the income tax laws regarding charitable deductions; the taxpayer's [Ischie's] real estate corporations ... may have earned taxable income through their business activities over the period at issue; and the taxpayer himself may have derived personal income from the donations of distressed properties which may be taxable income and may have knowingly and willfully failed to file an income tax return and attempted to evade the payment of income taxes.[7]

It is to investigate these possible violations that the government asserts the summonses were issued.

To obtain judicial enforcement of a summons, the IRS must satisfy the standards established by the Supreme Court in *United States v. Powell*.[8] The government "must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to

**4.** Affidavit of IRS Special Agent John Kees at para. 10.

**5.** Petitioners characterize their motions as seeking summary judgment and object to Kees' affidavits on the ground that they contain statements which are not within his "personal knowledge" and are thus inadmissible under Fed.R.Civ.P. 56(e). *See United States v. Manufacturers Bank of Southfield,* 518 F.Supp. 495, 497 (E.D.Mich.1981).

The instant motions, however, are not made pursuant to Rule 56. Moreover, statements not based on personal knowledge are routinely considered on motions, such as this one, where the government is burdened with showing cause for an investigation or enforcement proceeding.

Given that hearsay is admissible, for example, in affidavits supporting the issuance of an arrest warrant, Fed.R.Crim.P. 4(a), the issuance of a search warrant, Fed.R.Crim.P. 41(c)(1), and upon arraignment before a magistrate, Fed.R.Crim.P. 5, it may also be considered on a motion to quash an IRS summons.

**6.** Supplemental Affidavit of IRS Special Agent Kees, at paras. 3, 4 & 6.

**7.** Affidavit of IRS Special Agent Kees, at para. 10.

**8.** 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964).

the purpose, that the information sought is not already in the possession of the government, and that the administrative steps required by the Code have been followed." Once the government establishes a prima facie case for enforcement, the burden shifts to the taxpayer to establish that enforcement would constitute an abuse of the Court's process.[9] Petitioners have not disputed that the government has met the *Powell* criteria, but rather have argued that enforcement of the summonses would violate their First Amendment rights and constitute an abuse of process.

### I. First Amendment Rights

Petitioners assert that because enforcement of the summonses will reveal the names of persons who have contributed real estate to the church, it will: (1) directly burden some donors' free exercise of religion and freedom of association; and (2) discourage donations and thereby infringe the free exercise and associational rights of the church, the monastery, church members, and contributors. Since the church has standing to represent the interests of its members and contributors,[10] a determination that any of petitioners lacked standing would not avoid resolution of any issues in this case. It may thus be assumed, without deciding, that all petitioners have standing.[11]

### A. Free Exercise

■ The First Amendment prohibits any law "respecting an establishment of religion, or prohibiting the free exercise there-

of." In determining whether an action by the government violates the free exercise clause, the Supreme Court has employed a two-part balancing test. Under the test, the petitioners must first show that the government action in question—here, enforcement of subpoenas—burdens the exercise of their religion. Second, if a burden is found to exist, the government action will be held constitutional only if the government's interest outweighs the resulting impairment of the right to free exercise. The Court may inquire into the importance of a particular religious ritual, the importance of the government's secular purpose, and whether the government's ends may be achieved by less restrictive means.[12]

Petitioners argue that revealing the names of those who donate property will tend to discourage donations and will reduce the funding for church activities. Petitioners, however, present no proof that contributors will learn that the government has reviewed the records sought or that anyone but IRS personnel will learn the names of the contributors.[13] Moreover, the claimed impact on free exercise is incidental; contribution to the church is not forbidden, and the summons does not directly impinge upon any practice central to the religious beliefs of church contributors or members.[14]

To be weighed against this limited burden is the government's substantial interest in determining whether Ischie has earned unreported income or assisted others in violating the laws concerning charita-

---

**9.** *Id.* at 58, 85 S.Ct. at 255.

**10.** *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 458, 78 S.Ct. 1163, 1169, 2 L.Ed.2d 1488 (1958).

**11.** *International Longshoreman's Assoc. v. Waterfront Commission of New York Harbor,* 667 F.2d 267, 270 (2d Cir.1981).

**12.** *See Wisconsin v. Yoder,* 406 U.S. 205, 214, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972); *Sherbert v. Verner,* 374 U.S. 398, 403, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963); *Brandon v. Board of Education of the Guilderland Central High School District,* 635 F.2d 971, 976 (2d Cir.1980), cert. denied, 454 U.S. 1123, 102 S.Ct. 970, 71

L.Ed.2d 109 (1981); *United States v. Holmes,* 614 F.2d 985, 989 (5th Cir.1980).

**13.** Petitioners' repeated suggestion that Kees routinely passes information to the press is not supported by the affidavits they cite.

**14.** *United States v. Grayson County State Bank,* 656 F.2d 1070, 1074 (5th Cir. Unit A 1981), cert. denied, 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed.2d 460 (1982); *United States v. Holmes,* 614 F.2d 985, 989 (5th Cir.1980); cf. *Hearde v. Commissioner of Internal Revenue Service,* 421 F.2d 846 (9th Cir.1970).

ble deductions. Such interests have repeatedly been recognized as substantial and compelling.[15] The summonses are not needlessly broad; in order to investigate whether Ischie has assisted others in evading the tax laws, the records of the real estate transactions are obviously relevant. Since Ischie's personal records are unlikely to detail these transactions and since the IRS does not maintain files on charitable contributions by the name of the donee, the records of the church's corporations are necessary to the investigation. In this circumstance, the burden on petitioners' free exercise rights is justifiable.

### B.  Freedom of Association

■ A similar analysis applies to the petitioners' claims of infringement of the rights of church members and donors to freedom of association. The First Amendment protects the right "to engage in association for the advancement of beliefs and ideas." [16]  Petitioners bear the initial burden of showing that their right to freedom of association is threatened. In the instant case, petitioners argue that disclosure of the names of contributors would discourage some persons from contributing to the church, and that the decline in contributions could threaten the church's existence. Petitioners' claims seem exaggerated, since they have not shown that enforcement of these subpoenas will have any additional impact upon contributions or that contributors will even learn of the subpoenas. However, because governmental attempts to compel disclosure of records that contain the names of contributors are often subject to exacting scrutiny,[17] petitioners have raised a claim of arguable infringement.

To obtain enforcement of the summons, the government must demonstrate that the disclosure is "substantially related to a compelling governmental interest."  As noted above, the "compelling governmental interest" is enforcement of the tax laws and the "substantial relationship" is provided by the circumstantial evidence of alleged wrongdoing presented in the affidavits of Agent Kees. Given Ischie's central role in arranging the donation, appraisal, and resale of properties sold by the church at a fraction of their original appraised value, the IRS has justified cause to pursue its investigation. Even if the IRS investigation has some chilling effect, it is justified by its substantial relationship to a compelling goal.

### II.  Bad Faith/Abuse of Process

■ Petitioners contend that the IRS summonses were not issued as part of a legitimate investigation, but rather as part of a bad faith investigation directed at the church, rather than Ischie, and conducted for the purpose of harassing both. As petitioners acknowledge, an "unsubstantiated broad allegation" of an improper motive is insufficient to prevent the enforcement of a summons.[18] Rather, there must be a "meaningful and substantial factual showing" of bad faith.[19]

Petitioners allege but have failed to establish bad faith and harassment. Relying on the affidavits of the church's accountant, Elaine Kaldor, and one of its attorneys, Allan Greenstein, petitioners allege that Kees stated he was looking for "everything including the kitchen sink," that he asked whether the church conducted services and how many members it has, and that when Kaldor asked him why the church might need to file tax returns, he asked, "What if it's not a church?"

**15.**  *United States v. Grayson County State Bank,* 656 F.2d 1070, 1074 (5th Cir. Unit A 1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed.2d 460 (1982); *United States v. Holmes,* 614 F.2d 985, 990 (5th Cir.1980); *United States v. Egan,* 459 F.2d 997, 998 (2d Cir.), *cert. denied,* 409 U.S. 875, 93 S.Ct. 123, 34 L.Ed.2d 127 (1972).

**16.**  *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 462, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958).

**17.**  *Id.; International Longshoreman's Assoc. v. Waterfront Commission of New York Harbor,* 667 F.2d 267, 270 (2d Cir.1981).

**18.**  *United States v. First Pennsylvania Bank,* 453 F.Supp. 457, 460 (E.D.Pa.1978).

**19.**  *SEC v. Knopfler,* 658 F.2d 25, 26 (2d Cir.1981) (per curiam), *cert. denied,* 455 U.S. 908, 102 S.Ct. 1255, 71 L.Ed.2d 446 (1982).

Even assuming that Kees actually made these statements, they give rise to no inference that his investigation of Ischie is anything but legitimate. It cannot be assumed that a passing inquiry into the nature of a church during the investigation of an spiritual leader means that the investigation is actually directed at the church. Petitioners fail to explain why Kees' alleged questions suggest hostility toward the church or a belief that it is illegitimate.

Petitioners also claim that Kees' bad faith is evidenced by the fact that while investigating certain contributors to the church, Kees interviewed Ischie on the assurance that neither Ischie nor the church were the focus of the investigation. Petitioners allege that despite this assurance, Kees asked Ischie numerous questions regarding the church's procedures for handling donated property. Such information, however, would be relevant to the investigation of the contributors, and the mere fact that Kees later extended his investigation to include Ischie does not establish bad faith.[20] Lastly, petitioners note that Agent Kees was accused of bad faith in a previous investigation. In that case, however, the court found the accusation unsupported by any substantial evidence.[21] The claim of bad faith in the instant case is similarly lacking in substance. A spiritual or religious leader is no more immune from investigation by the IRS than the ordinary citizen where there is a substantial basis for belief, as clearly appears in this case, that the taxpayer's conduct warrants an investigation to determine whether he has violated the law by failing to file tax returns and by aiding and abetting others in evading the payment of taxes.

## III. Discriminatory Investigation

■ Petitioners, pointing to other organizations they allege employ similar fundraising techniques, assert that they are the victims of discriminatory prosecution. In making this claim, petitioners bear the heavy burden of establishing a prima facie case: (1) that others similarly situated were not prosecuted and (2) that the government selected the taxpayer for prosecution in bad faith or for an invidious reason, such as his religion.[22] Petitioners persist in a misnomer in claiming Ischie is the subject of discriminatory "prosecution."[23] There is, as yet, no prosecution of Ischie. Applying, as other courts have done, a similar test to a claim of "discriminatory investigation,"[24] we may construe petitioners' argument as making such a claim.

As regards the first prong of the test, petitioners' only evidence that similarly situated persons have escaped investigation is that in 1982 the IRS found that numerous donations to Brigham Young University were grossly overvalued, but no official or employee of the university was subject to a criminal investigation or prosecution after the excess deductions were disallowed. Because there was a civil investigation, the Brigham Young case presents no ground for opposing the civil investigation of Ischie. But more to the point, Brigham Young remains a single case in which criminal investigation was not pursued. As

---

**20.** *Socol v. United States,* No. 84 Civ. 4119 (WCC), slip op. at 6–7 (S.D.N.Y. July 10, 1985) [Available on WESTLAW, DCTU database] ("It is not unusual or unreasonable for an investigator to determine that an individual should be a subject of an investigation only after speaking with him about his involvement with the matter under investigation.").

**21.** *Id.* at 6–7.

**22.** *Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *United States v. Moon,* 718 F.2d 1210, 1229 (2d Cir.1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984); *United States v. Berrios,* 501 F.2d

1207, 1211 (2d Cir.1974); *United States v. Meyers,* 635 F.2d 932, 940 (2d Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980); *United States v. Henderson,* 386 F.Supp. 1048, 1050 (S.D.N.Y.1974).

**23.** Petitioners also persist in assuming that the IRS is investigating them rather than Ischie. This has not been shown. The Court thus recognizes only such claims as petitioners might bring on Ischie's behalf.

**24.** *Karme v. Commissioner of Internal Revenue,* 673 F.2d 1062, 1064 (9th Cir.1982); *Greenberg's Express, Inc. v. Commissioner of Internal Revenue,* 62 T.C. 324, 328 (1974).

such, it provides no basis for inferring that Ischie has been singled out. The IRS is not obliged to investigate every potential instance of criminal wrongdoing. Moreover, petitioners have presented no evidence indicating that the investigation of Ischie is improperly motivated. Lacking such evidence, petitioners' claim also fails the second part of the test.

### IV. Violation of 26 U.S.C. § 7611

■ In line with their contention that the investigation is aimed at the church, not Ischie, petitioners claim that the IRS must comply with 26 U.S.C. § 7611. Section 7611 sets forth detailed procedures for the conduct of IRS inquiries into a church's tax-exempt status or into whether the church is carrying on an unrelated business that may be subject to taxation.

As discussed above, petitioners have not shown that the investigation is in fact directed at the church. The instant case falls within several explicit exceptions to section 7611. Not only does the section not apply to an investigation of a person other than a church, it does not apply to any criminal investigation or any inquiry into a willful attempt to evade a tax or a knowing failure to file an income tax return under title 26. The IRS investigation is a criminal investigation and concerns whether Ischie has knowingly and willfully failed to file income tax returns, attempted to evade the payment of income taxes, or aided and abetted others in the preparation of false income tax returns. Moreover, independent of the focus of the investigation, section 7611 does not protect records sought under a third party recordkeeper summons, such as those at issue here.[25] On any of these grounds, section 7611 does not apply to the instant case.

### V. Petitioners' Motion for Discovery

■ Petitioners move for limited discovery to depose Agent Kees and other agents and to examine IRS records of the investigation. However, "[u]nless a taxpayer opposing enforcement of a summons makes a 'substantial preliminary showing' of an alleged abuse, neither an evidentiary hearing nor limited discovery need be ordered by the district court."[26]

In making their motion, petitioners rely on United States v. Millman.[27] Yet in Millman, the Court granted discovery on a much stronger showing of possible bad faith than is present here. Whereas in Millman, the government conceded hostility by one of its agents, no such concession is made in the instant case. If the petitioners' allegations that Kees asked questions about the church were taken as evidence of wrongdoing, then any investigation of a church leader or contributor which included background questions about the church would require an evidentiary hearing.

The assertion that the IRS's "true" aim is to revoke the church's tax-exempt status must be rejected in light of the substantial evidence that Ischie helped to arrange transactions in which donors grossly overstated the amount of their donations. There is no reason to believe the IRS is not seriously pursuing its investigation of Ischie, and given this fact, there can be no finding of bad faith, even if the investigation will incidentally reveal some information about church affairs.

### V. Petitioners' Motion to Strike

■ Petitioners move pursuant to Fed.R. Civ.P. 12(f) to strike Exhibits B through K attached to the Kees Declaration on the grounds that they are scandalous, immaterial, and impertinent. Exhibit B is a copy of the church's advertisement for distressed real estate. Exhibits C through H, J and K are copies of stories appearing in newspapers and periodicals discussing Is-

25. See 26 U.S.C. 7611(h)(4)(B)(i).

26. United States v. Tiffany Fine Arts, Inc., 718 F.2d 7, 14 (2d Cir.1983), aff'd, 469 U.S. 310, 324 n. 7, 105 S.Ct. 725, 733 n. 7, 83 L.Ed.2d 678 (1985); see United States v. Millman, 765 F.2d 27, 29 (2d Cir.1985) (per curiam); United States

v. Morgan Guaranty Trust Co., 572 F.2d 36, 42–43 n. 9 (2d Cir.), cert. denied, 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978).

27. 765 F.2d 27 (2d Cir.1985) (per curiam).

chie and the church. Exhibit I is a letter dated February 28, 1983 from Elaine Kaldor, the church's accountant, to Dixie/Northern, Inc., stating that the Monastery owns real property in excess of $9,600,000.

The Court finds that these exhibits are neither scandalous nor unrelated to the dispute, and thus need not be stricken.

### CONCLUSION

Petitioners' motions to quash the IRS summonses are denied, as are their motions for discovery and for the striking of government exhibits.

So ordered.