In the Matter of FULL GOSPEL TABERNACLE, INC., et al., Appellants, v ATTORNEY-GENERAL OF THE STATE OF NEW YORK, Respondent.

Third Department, December 29, 1988

## APPEARANCES OF COUNSEL

*Anderson Russell Kill & Olick, P. C. (Anthony Princi* of counsel), for appellants.

*Robert Abrams, Attorney-General (Peter A. Crusco* of counsel), for respondent.

## OPINION OF THE COURT

LEVINE, J.

Petitioner Full Gospel Tabernacle, Inc. (hereinafter the Tabernacle) is an independent Pentecostal church, located on Long Island, organized under Religious Corporations Law article 8. Its minister is Eugene Profeta, a nationally known preacher. Petitioner Gene Profeta Ministries, Inc. (hereinafter the Ministry) is a religious ministry also headed by Profeta, organized under Religious Corporations Law article 10. It was created to support the expanding ministry of Profeta in a way that would not place a burden on the Tabernacle. Jessica Hahn, who achieved notoriety as a result of public disclosure of a sexual encounter between her and the television evangelist Jim Bakker, had been a secretary employed by the Tabernacle and the Ministry (hereinafter collectively referred to as petitioners). Following the further revelations that a substantial payoff had been made on behalf of Bakker to silence Hahn, the State Department of Taxation and Finance started a tax investigation of Hahn, in the course of which petitioners' records pertaining to Hahn were subpoenaed and produced by them. Apparently, the focus of the investigation shifted to other officers and employees of the two religious organizations and, in June 1987, the Commissioner of Taxation and Finance referred the matter to respondent pursuant to Executive Law § 63 (3) for criminal investigation. A Grand Jury was subsequently convened in Albany County for purposes of investigating and hearing charges.

In late June and early July 1987, respondent served Grand Jury subpoenas duces tecum for the production of various records and documents of petitioners. After the return dates for production of these papers were adjourned several times at petitioners' request, they moved before Supreme Court to

quash the subpoenas on constitutional grounds and because of alleged prosecutorial misconduct and bad faith. While the motion was pending, they also moved for a stay of the Grand Jury proceedings, which was denied by Supreme Court. Petitioners then appealed from the denial of the stay and moved before this court to stay the Grand Jury proceedings pending that appeal and for a preference. This application was denied by decision dated October 28, 1987. In March 1988, Supreme Court denied petitioners' motion to quash the subpoenas duces tecum. This appeal is from the order of denial.

Following denial of the motion to quash, petitioners produced before the Grand Jury such of the demanded documents and records as were available and in existence. The Grand Jury continued to hear evidence in the case and, in October 1988, it handed up an indictment charging Profeta with three counts of offering a false instrument for filing in the first degree (Penal Law § 175.35), two counts of filing a false personal income tax return (Tax Law § 1804 [b]), six counts of falsifying business records in the first degree (Penal Law § 175.10), one count of attempted perjury in the first degree (Penal Law §§ 110.00, 210.15), three counts of tampering with a witness in the fourth degree (Penal Law § 215.10) and three counts of criminal solicitation in the fourth degree. Profeta's wife was also charged with three counts of offering a false instrument for filing in the first degree and two counts of filing a false personal income tax return. The Profetas were arraigned, pleaded not guilty and their case has been set down for trial. The Grand Jury reported that it had completed its investigation. Respondent then moved before this court to dismiss the instant appeal as moot. Petitioners opposed the motion to dismiss and cross-moved for a stay of the trial of the Profeta indictments pending determination of the appeal. The motion and cross motion were consolidated for argument with the appeal.

■ A preliminary issue to be disposed of is respondent's motion to dismiss on the ground of mootness. Despite the fact that the Grand Jury has completed its work and, hence, no longer has use for the documentary evidence produced under the Grand Jury subpoenas challenged by the motion to quash, we conclude that the appeal from the denial of that motion is not moot. "[A]n appeal is not rendered moot if there remain undetermined rights or interests which the respective parties are entitled to assert" (*Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters &*

*Joiners [People],* 72 NY2d 307, 311, *cert denied* — US —, 109 S Ct 492). Respondent remains in possession of petitioners' records and documents and it is readily inferable, from the allegations of the Profeta indictments, that at least some of the items produced pursuant to the Grand Jury subpoenas will be offered as evidence upon the trial of the indictments. Respondent's right to continue to withhold petitioners' documents and records under the challenged subpoenas is, thus, still at issue. Moreover, introducing these evidentiary materials at the trial would be subject to the very same constitutional objections of petitioners as are at issue on this appeal. These undetermined rights and interests prevent application of the mootness doctrine to the instant appeal *(see, Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners [People], supra).*

Turning then to the merits, the main thrust of petitioners' appeal is that production of the demanded papers would seriously impair their rights under the 1st Amendment of the US Constitution and those of their congregants and adherents to the free exercise of religion and freedom of association. The burden was on petitioners in the first instance to make at least some showing that production of the information sought would impair their 1st Amendment rights *(see, St. German of Alaska E. Orthodox Catholic Church v United States,* 653 F Supp 1342, 1346 [Weinfeld, J.], *affd* 840 F2d 1087; *see also, United States v Citizens State Bank,* 612 F2d 1091, 1094). Once such a showing is made, the prosecution has the burden of establishing that the infringement is outweighed by a compelling State interest, to which the information sought is substantially related, and that the State's ends may not be achieved by less restrictive means *(Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners [People], supra,* at 312-313; *see, Local 1814, Intl. Longshoremen's Assn. v Waterfront Commn. of N. Y. Harbor,* 667 F2d 267, 273).

Petitioners have attempted to meet their initial burden to show an impairment of their rights by the submission of affidavits of some nine congregants, each stating that the financial records sought under the subpoenas would disclose the identities of them and other contributors to those religious institutions, in violation of the tenet of their church, based upon a portion of the Sermon on the Mount *(see,* Matthew 6:1-4), that charity shall be given in secrecy. A number of the same affiants further assert that, because of the controversial

status of the fundamentalist, Pentecostal church movement in the eyes of the general public and among other organized religious sects, disclosure of their identities as adherents of and contributors to petitioners would subject them to ridicule and embarrassment; thus, the disclosure through production of the same financial records would have a "chilling effect" on their freedom to associate with and participate in petitioners' religious activities. In addition, an affidavit of the minister of music of the Tabernacle was submitted in which he averred that, under the same Biblical injunction to give charity in secrecy, production of the various records of the Tabernacle's expenditures and disbursements demanded under the subpoenas would similarly infringe upon the church's rights under the Free Exercise Clause of the 1st Amendment. Finally on this aspect of the challenge to the subpoenas, the affidavit of Catherine Arleth, employed as a secretary and bookkeeper at the Tabernacle and bookkeeper of the Ministry, was submitted. She averred that the Ministry did not possess some 18 of the 31 items of subpoenaed records and documents, including general ledgers, accounts payable and receivable journals, and wage reporting returns and W-2 statements. Most of the same missing items were also alleged not to be available with respect to the Tabernacle. She further averred that, of the demanded documents actually available and in possession of the two organizations, production of such items as cash receipts and disbursement journals, bank statements and canceled checks, postal shipment records, travel and expense records of employees, telephone bills and records of charge or credit accounts "would reveal the identity and amount of contributions to [petitioners]". Moreover, according to Arleth, production of the certificates of incorporation and corporate and board of directors' minute books of the organizations, demanded under the subpoenas, "would reveal confidential information of a pastoral nature".

■ In our view, petitioners have sufficiently substantiated that disclosure of identifying information as to contributors would violate the tenets of their religious faith. Although far less clearly established, we may assume, arguendo, that disclosure of the identities of recipients of the charities of petitioners would have the same effect. Nevertheless, petitioners' showing of impairment of 1st Amendment rights is clearly inadequate as to many of the challenged items. Obviously, the naked, conclusory assertion by a bookkeeper having no ecclesiastical or other authority within the hierarchy of the Taber-

nacle or the Ministry, that production of a broad range of documents would violate the religious precepts of these organizations or disclose "confidential information of a pastoral nature", does not demonstrate even an arguable 1st Amendment infringement. For example, it is hard to conceive that release of petitioners' charge or credit account records, or records of employees' travel and expense accounts, would have any likelihood whatsoever of disclosure of the identities of donors or of legitimate charity recipients of church funds. The conflict between disclosure of these records (and many of the other items in the subpoenas objected to) and the religious tenet which has been established here is so tenuous as to be at best highly speculative and, hence, unworthy of consideration *(see, Buckley v Valeo,* 424 US 1, 70).

█ Restricting our analysis, then, to the documents and records disclosure of which have been shown to present at least an arguable infringement of 1st Amendment rights, notably petitioners' cash receipts and disbursement journals, bank statements and canceled checks, we find that respondent has established the requisite bases for sustaining the subpoenas. The fact that disclosure of the items would directly violate the denominational belief that church contributions should be kept secret is " 'only the beginning, however, and not the end of the inquiry' " *(Scott v Rosenberg,* 702 F2d 1263, 1273, *cert denied* 465 US 1078, quoting *United States v Lee,* 455 US 252, 257; *see also, Lyng v Northwest Indian Cemetery Protective Assn.,* 485 US —, 108 S Ct 1319; *Smilow v United States,* 465 F2d 802, *vacated on other grounds* 409 US 944; *Matter of Fuhrer,* 100 Misc 2d 315, *affd sub nom. Fuhrer v Hynes,* 72 AD2d 813). Respondent has submitted proof by affidavit that the subject matter of the Grand Jury's investigation was the commission by petitioners' officers and employees of tax-related offenses involving wage and income tax reporting, misuse of church funds and abuse of tax-exempt status. It is by now well settled that enforcement of a State's revenue laws constitutes a compelling governmental interest *(see, St. German of Alaska E. Orthodox Catholic Church v United States,* 840 F2d 1087, 1093, 1094, *supra; United States v Grayson County State Bank,* 656 F2d 1070, 1074, *cert denied sub nom. First Pentecostal Church v United States,* 455 US 920; *United States v Holmes,* 614 F2d 985, 990). Likewise, disclosure of petitioners' basic financial records regarding their income and expenditures bears a substantial relationship to an investigation of whether, e.g., employees and other

persons in authority in these religious institutions have caused an underreporting of remuneration paid to officers or employees, whether church funds and other resources have been illegally diverted for nonreligious purposes, and whether recipients of any such illegal diversion have failed to report it as income.

We have also concluded that there was no less restrictive means for obtaining relevant evidence of the violations of law under investigation. The subpoenas did not seek either general membership lists or general lists of contributors to or charitable donees of the organizations. The production demanded covers only a limited period of time. There is no indication whatsoever that the purpose of the subpoenas was to identify contributors. Rather, any disclosure of the identities of specific contributors was incidental to the effort to uncover the flow of money and property in and out of petitioners, an indispensable element of the Grand Jury's investigation. From our in camera examination of the Grand Jury minutes submitted to Supreme Court on the motion to quash (a procedure sanctioned in *Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners [People]*, 72 NY2d 307, 314, *supra,* and *Matter of Levin v Murawski,* 59 NY2d 35, 42, n 4), it clearly appears that the financial information sought was highly relevant and tailored to the specific crimes under investigation, as further confirmed by the nature of the subsequent indictment. No less intrusive means for obtaining evidence of the income and expenditures of the religious organizations occur to us, nor have petitioners suggested any less intrusive means. Therefore, petitioners' 1st Amendment objections to the subpoenas are unavailing *(see, Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners [People], supra,* at 314; *see also, St. German of Alaska E. Orthodox Catholic Church v United States,* 840 F2d 1087, 1093-1094, *supra).*

■ Petitioners' remaining contentions do not require extensive discussion. Their claim that the subpoenas should be quashed because they are so overbroad as to constitute an unreasonable search and seizure is clearly without merit. Given the broad investigatory function of the Grand Jury, the documents sought were relevant and, in any event, petitioners certainly have not demonstrated that any of the demanded documents and records can have no conceivable relevance to the investigation. Production of the subpoenaed items that petitioners say they actually possess would not be unduly

burdensome. Hence, this ground for the motion to quash is also unavailing *(see, Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners [People], supra,* at 315-317; *Virag v Hynes,* 54 NY2d 437, 444; *see also, United States v Calandra,* 414 US 338). Nor are petitioners' allegations of prosecutorial misconduct and bad faith sufficient to require suppression of the subpoenas *(see, St. German of Alaska E. Orthodox Catholic Church v United States,* 653 F Supp 1342, 1347-1348, *supra; In re Rabbinical Seminary Netzach Israel Ramailis,* 450 F Supp 1078; *see also, Matter of Cunningham v Nadjari,* 39 NY2d 314, 318).

For all the foregoing reasons, Supreme Court's denial of the motion to quash the subpoenas should be upheld in all respects. In view of this determination, petitioners' cross motion to stay the trial of the indictments against the Profetas should be dismissed as academic.

CASEY, J. P., MIKOLL, YESAWICH, JR., and MERCURE, JJ., concur.

Motion to dismiss appeal denied, without costs.

Cross motion for a stay of the trial dismissed, as academic, without costs.

Order affirmed, without costs.