(December 21, 1989)

■ NEW YORK STATE COMMISSION ON GOVERNMENT INTEG-

RITY, Respondent-Appellant, v ROBERT J. CONGEL et al., Appellants-Respondents.—Orders of the Supreme Court, New York County (Kristin Booth Glen, J.), both entered on or about December 20, 1988, which (1) granted that part of petitioner's motion, pursuant to CPLR 2308 (b), to compel respondents to comply with subpoenas ad testificandum served upon them by petitioner, but which denied the motion insofar as it sought compliance with subpoenas duces tecum, and (2) upon reargument, adhered to its original decision, respectively, modified, on the law, to grant petitioner's motion to compel as to the subpoenas duces tecum, and except as so modified, affirmed, without costs.

At issue upon this appeal is the enforceability of subpoenas duces tecum and ad testificandum issued by petitioner New York State Commission on Government Integrity to respondents Congel, Ungerer and Kenan. Respondents are principals of the Pyramid Companies, a real estate development group based in Syracuse. The subpoenas were issued in connection with petitioner's investigation of the circumstances attending the expenditure by persons and entities affiliated with Pyramid of hundreds of thousands of dollars in Town Council elections held in Poughkeepsie, New York, in 1985. The money was apparently funneled into the Town Council campaign without the knowledge of either the voters or the candidates to help secure the election of candidates sympathetic to Pyramid's previously rejected proposal to construct a large shopping mall in Poughkeepsie.

The Commission's investigation of the Poughkeepsie election was begun in July 1987 pursuant to a broad grant of investigative authority contained in Executive Order No. 88.1 (9 NYCRR 4.88), the order establishing the Commission, signed by Governor Cuomo on April 21, 1987. The Commission was established as a successor to the State-City Commission on Integrity in Government, the latter agency having recommended in its report to the Governor the appointment of a new commission with investigative powers "including the authority to compel the attendance and testimony of witnesses and the production of records" (Executive Order No. 88.1, preamble). The Governor concurred with this recommendation, observing in his order, "[i]t is my judgment that it is of compelling public importance that weaknesses in existing laws, regulations and procedures relating to government integrity be further investigated and addressed". (Executive Order No. 88.1, preamble.) The new Commission appointed by the Governor was accordingly authorized "to investigate the

management and affairs of any department, board, bureau, commission (including any public benefit corporation) or political subdivision of the State in respect to the adequacy of laws, regulations and procedures relating to maintaining ethical practices and standards in government, assuring that public servants are duly accountable for the faithful discharge of the public trust reposed in them, and preventing favoritism, conflicts of interest, undue influence and abuse of official position, and to make recommendations for action to strengthen and improve such laws, regulations and procedures" (Executive Order No. 88.1 [I]). As is here relevant, the new Commission was specifically directed to "[i]nvestigate weaknesses in existing laws, regulations and procedures relating to campaign contributions and campaign expenditures, and determine whether such weaknesses create an undue potential for corruption, favoritism, undue influence or abuse of official position or otherwise impair public confidence in the integrity of government" (Executive Order No. 88.1 [II] [5]). In addition the Commission was directed to "[i]nvestigate weaknesses in existing enforcement machinery for laws, regulations and procedures relating to unethical practices, and determine whether such weaknesses create undue potential for corruption, favoritism, undue influence or abuse of official position or otherwise impair public confidence in the integrity of government" (Executive Order No. 88.1 [II] [3]). To carry out its assignment, the Commission was vested with the investigative powers of the Attorney-General enumerated in section 63 of the Executive Law, among which is the power to subpoena witnesses and documents. The possibility that the Commission would, in the course of its inquiry, come across evidence of criminal wrongdoing was contemplated in the order which provided that "such evidence shall promptly be communicated to the appropriate law enforcement authorities" (Executive Order No. 88.1 [VII]). In this regard the order further provided, "[T]he commission shall cooperate with prosecutorial agencies to avoid jeopardizing ongoing investigations and prosecutions." (Ibid.)

The subpoenas in question were issued in December 1987, after attempts by the Commission at eliciting the respondents' voluntary disclosure of the sought-after testimony and documents met with failure. When, well beyond the return date, responsive documents remained unproduced and there appeared no prospect that they would be produced, the Commission moved pursuant to CPLR 2308 (b) to compel compliance with the subpoenas. The motion to compel was granted as to

the subpoenas ad testificandum, but denied as to the subpoenas duces tecum.

The motion court denied enforcement of the subpoenas duces tecum because it was of the view that the disclosure sought went beyond the proper scope of the Commission's inquiry. The court noted that at the time the subpoenas were served the Commission's investigation of the Poughkeepsie elections had already progressed to the point that the Commission was able to issue a preliminary report citing the Poughkeepsie Town Council campaign as illustrative of the shortcomings of the Election Law's campaign finance disclosure provisions, and of the ineffectiveness of the Board of Elections in monitoring compliance with the Election Law's existing, albeit inadequate, disclosure requirements. Given the information the Commission already possessed, the court was of the opinion that more was unnecessary except for the purpose of ferreting out specific violations of law, a prosecutorial function not within the Commission's purview. The court held that, whether by subpoena or search warrant, the government's elicitation of information is subject to the Fourth Amendment's prohibition against unreasonable searches and seizures and that as the focus of government inquiry narrowed to the investigation of specific instances of wrongdoing there was an obligation on the part of the investigating agency to justify its disclosure requests by showing that the information sought was highly material and relevant to its authorized inquiry. With reference to the present matter the court stated, "Although the Commission's investigation may have begun as general and nonaccusatory, it is now at a point where much of the information sought to be obtained by the subpoenas duces tecum may be evidence of criminal violations of the election or other laws, and may be turned over to the State and/or Federal prosecutors for criminal proceedings. Since the Commission has not shown, and, at this point in the investigation cannot show that the material subpoenaed is highly relevant and material to its properly authorized investigation, the subpoenas duces tecum must be quashed" (142 Misc 2d 9, 21).

Subpoenas duces tecum are, of course, often employed by Grand Juries to obtain evidence of criminal wrongdoing. There is however, no Fourth Amendment rule restricting the Grand Jury's use of the subpoena power to instances in which the information sought is highly relevant and material to its investigation. To the contrary, the only limitation imposed by the Fourth Amendment is that the subpoena duces tecum not be "too sweeping in its terms to be regarded as reasonable"

*(Hale v Henkel,* 201 US 43, 76; *see also, United States v Dionisio,* 410 US 1, 11-12). As the Court of Appeals has recently reiterated, "[a]ll that is required under the State and Federal Constitutions is that the subpoenaed materials be relevant to the investigation being conducted and that the subpoena not be overbroad or unreasonably burdensome" *(Matter of Hynes v Moskowitz,* 44 NY2d 383, 394, as quoted in *Matter of Grand Jury Subpoenas [People],* 72 NY2d 307, 315-316). It is clear then that the degree of relevance and materiality necessary to sustain a subpoena duces tecum does not become greater in a prosecutorial context. The relevant inquiry, whether the subpoena is issued in connection with a criminal prosecution or in pursuance of a nonprosecutorial investigation, is simply whether the material sought is in some measure relevant to the proper objectives of the investigative body.

Plainly, the material sought in the subpoenas here at issue was relevant to the Commission's inquiry. As noted, the Commission was expressly directed to "[i]nvestigate weaknesses in existing laws, regulations and procedures relating to campaign contributions and campaign expenditures, and determine whether such weaknesses create an undue potential for corruption, favoritism, undue influence or abuse of official position or otherwise impair public confidence in the integrity of government" (Executive Order No. 88.1 [II] [5]). Thus, the Commission was assigned the task not only of ascertaining the theoretical weaknesses in campaign finance laws, but of determining whether those weaknesses actually created an undue potential for abuse. It was certainly relevant to this latter phase of its assigned inquiry for the Commission to probe specific instances in which the law's weaknesses had been exploited—in which the potential for abuse had, in fact, been realized.

Indeed, it is not so much the relevance of the material sought by the Commission that is disputed as its necessity. Respondents and the motion court repeatedly assert that the Commission already has the information it needs and that further disclosure is, therefore, unnecessary. It is, however, not for the court to determine whether the subpoenaed materials are necessary. Provided the materials are relevant to the proper purpose of the investigation, the subpoena's demand for their disclosure must ordinarily be honored unless there is some sustainable claim of harassment or overbreadth.

This is true even if enforcement of the subpoena will cause the disclosure of material probative of criminal wrongdoing.

Although it is not within the Commission's mandate to prosecute violations of law, there is nothing to prevent the Commission from obtaining material with incidental prosecutorial application, so long as the material is also relevant to the Commission's proper objectives. Here, the Commission has been charged with investigating "weaknesses in existing enforcement machinery for laws * * * relating to unethical practices" (Executive Order No. 88.1 [II] [3]). This mandate, in the present context, authorizes and indeed requires the Commission to ascertain the effectiveness of the Board of Elections in monitoring and enforcing the Election Law's financial disclosure provisions. Knowledge of underlying violations of the Election Law is undoubtedly pertinent to this inquiry, for without such knowledge it would be impossible to assess the degree to which violations had been detected and addressed by the Board, or whether the Board's action as to particular violations, if any, was adequate to redress abuses and deter their recurrence.

The fact that the Commission is obliged to report violations of law to prosecutorial agencies does not, as respondents urge, signify any limitation on the scope of its inquiry which would prevent it from obtaining the materials here sought. As is clear from the Executive Order, the reporting requirement's only purpose is to prevent the Commission's inquiry from jeopardizing ongoing investigations and prosecutions. Nothing in the order can be read to forestall the Commission from inquiring into specific violations of law where, as here, the inquiry is relevant and poses no threat to ongoing investigations and prosecutions. Indeed, the reporting requirement would be completely unnecessary if the scope of the Commission's inquiry was limited in the manner urged by respondents.

Having determined that the disclosure sought in the subpoenas duces tecum is generally sufficiently related to the legitimate objectives of the Commission's assigned inquiry to withstand Fourth Amendment scrutiny, it remains to be seen whether the subpoenas are to be upheld in their entirety or pruned of specific demands alleged to be overbroad or unduly burdensome.* In this regard, respondents have specified only two areas in which the subpoenas are alleged to be defective. It is claimed that the subpoenas require the production of

---

* It may be noted in passing that we are in complete agreement with the motion court that there exists no basis to conclude that the subpoenas were issued to harass the respondents.

materials properly shielded from disclosure by reason of the attorney-client privilege, and that they seek corporate and partnership records having no relevance to the inquiry. On the present record, which contains none of the allegedly privileged material, we are, of course, unable to determine whether the claim of privilege possesses any merit. At this juncture it is sufficient to note that the material sought is, in our view, generally relevant to the Commission's inquiry. It may be, however, that the Commission will be able to better focus its demand particularly with reference to Pyramid's records, whose disclosure we understand is sought for the limited purpose of ascertaining the identity of those affiliated with Pyramid-related entities so that the full extent of Pyramid's participation in the Poughkeepsie elections can be comprehended. The Commission has commendably offered to narrow the subpoena's demand in this respect (*see,* 142 Misc 2d, *supra,* at 16), and we trust that it will do so, so as to make judicial intervention unnecessary.

Finally, we are in agreement with the motion court that the subpoenas ad testificandum must be sustained. Respondents, speculating that their testimony will cover the same areas as to which disclosure was sought in the subpoenas duces tecum, contend that enforcement of the subpoenas ad testificandum will result in the attempted elicitation of irrelevant and constitutionally privileged information. We, however, decline to engage in such speculation, and have, in any event, found the disclosure sought by the subpoenas duces tecum to be relevant to the Commission's mandated investigation. The Commission indisputably has the power to compel the attendance of witnesses, and, accordingly, no legal wrong will be suffered by the respondents if they are forced to appear pursuant to the subpoenas' command. "Although there is scant case law to the contrary, the long established rule is that privilege may not be used as a ground to quash a subpoena ad testificandum in advance of compliance. Simply stated, privileges may not be asserted in advance of questions actually propounded." (2A Weinstein-Korn-Miller, NY Civ Prac ¶ 2304.13; *see also, e.g., Matter of Pennock v Lane,* 18 AD2d 1043; *People v Slochowsky,* 116 Misc 2d 1069.) Respondents may, of course, assert their First and Fifth Amendment privileges if and when questions intruding on constitutionally privileged areas are put to them. Concur—Murphy, P. J., Ross, Rosenberger and Rubin, JJ.

Kupferman, J., dissents in part and would affirm for the reasons stated by Glen, J.