[653 NYS2d 710]

In the Matter of LAWRENCE KALKSTEIN et al., Respondents, v THOMAS DiNAPOLI, as Chair of the New York State Assembly Standing Committee on Governmental Operations, et al., Appellants.

Third Department, January 23, 1997

### APPEARANCES OF COUNSEL

*Cleary, Gottlieb, Steen & Hamilton,* New York City *(Evan A. Davis* of counsel), for appellants.

*Thuillez, Ford, Gold & Conolly, L. L. P.,* Albany *(Michael J. Hutter* of counsel), for respondents.

### OPINION OF THE COURT

WHITE, J.

Following the election of Governor George Pataki in November 1994, two for-profit corporations were formed, New York Inaugural '95 Inc. and New York Transition '95 Inc. (hereinafter collectively referred to as the corporations), for the purpose, respectively, of managing the inauguration events of Governor Pataki and managing the transition of the State government at the termination of former Governor Mario Cuomo's term. Once formed, the corporations engaged in fundraising activities and dispersed funds in furtherance of their purposes. Because the corporations were not "political committees" within the meaning of Election Law § 14-100 (1), they were not obligated to comply with the various requirements set forth in the campaign financing law (*see,* Election Law § 14-102 *et seq.*). Concerned that this circumstance raised the same issues that prompted the enactment of the campaign financing law, three standing committees of the State Assembly[1] initiated an inquiry to ascertain whether the existing election, ethics and related laws and regulations pertaining to activities of corporations, like those here, are adequate to protect the public interest and whether additional laws need to be enacted to protect the public.

In furtherance of the inquiry, respondents jointly issued two subpoenas, one addressed to petitioner Charles A. Gargano

---

1. The standing committees are: The Standing Committee on Governmental Operations, the Standing Committee on Election Law and the Standing Committee on Oversight, Analysis and Investigation.

directing that he appear at a joint hearing and the second addressed to petitioner Lawrence Kalkstein directing him to appear and to also produce certain enumerated documents and materials.[2] Petitioners promptly moved, pursuant to CPLR 2304, to quash the subpoenas alleging, *inter alia*, that they were overbroad. Supreme Court agreed and quashed them except as to the requests set forth in the subpoena served on Kalkstein for the names of the contributors to the corporations, the amounts of their contributions and where, to whom and for what purposes such moneys were spent. Respondents appeal.

The Legislature's power to investigate, including its authority to compel testimony through its own processes, is deeply rooted and finds expression in statutory law (*see, Quinn v United States*, 349 US 155, 160-161; *Matter of Joint Legislative Comm. to Investigate Educ. Sys. of State of N. Y.*, 285 NY 1, 8; *see also*, Legislative Law § 60). Judicial incursion into the Legislature's exercise of its subpoena powers occurs " '[o]nly where the futility of the process to uncover anything legitimate is inevitable or obvious' " (*Matter of New England Petroleum Corp. v County of Suffolk*, 52 AD2d 926, 927, quoting *Matter of Edge Ho Holding Corp.*, 256 NY 374, 382). Respondent Thomas DiNapoli, the Chair of the Standing Committee on Governmental Operations, stated that, in order for the committees to conduct their inquiry, they "must understand the facts of who gave, how much was given, how much was expended, how much was given to political parties, and how excess funds, if any, were distributed upon the dissolution of these corporations". At this point, it appears that the information Supreme Court required to be produced will provide this information. It is equally apparent, on the present state of the record, that the precluded documents and materials will yield information that is extraneous to the central purposes of the committees' inquiry. Thus, we agree with Supreme Court's assessment that the subject subpoena's document request was overbroad.

An additional reason for limiting the subpoena is that the Legislature is treading on the right of political association which is protected by the First Amendment (*see, Matter of Citizens Helping Achieve New Growth & Empl. v New York State Bd. of Elections*, 201 AD2d 245, 247-248, *lv denied* 84

---

2. The requested documents and materials are set forth in the Appendix to this decision.

NY2d 811). When such right is implicated, the government's quest for information is precluded unless it shows "that there are governmental interests sufficiently important to outweigh the possibility of infringement [of First Amendment rights]" (*Buckley v Valeo*, 424 US 1, 66). Our review of the record discloses that respondents have not made such a showing with respect to the precluded materials, thereby shielding them from disclosure (*see, Federal Election Commn. v Larouche Campaign*, 817 F2d 233, 234-235).

We have not considered respondents' contentions premised on the Speech and Debate Clause because they were not raised before Supreme Court (*see, Agostino v Monticello Greenhouses*, 166 AD2d 471, 472). Accordingly, for these reasons, we concur with Supreme Court's limitation of the document request set forth in the Kalkstein subpoena.

We reach a different conclusion with respect to Supreme Court's preclusion of petitioners' oral testimony given the Legislature's unquestioned right to compel the attendance of witnesses (*see*, Legislative Law § 60). Moreover, as aptly expressed by Chief Judge Cardozo, "[i]nvestigation will be paralyzed if arguments as to materiality or relevance, however appropriate at the hearing, are to be transferred upon a doubtful showing to the stage of a preliminary contest as to the obligation of the writ. Prophecy in such circumstances will step into the place that description and analysis may occupy more safely" (*Matter of Edge Ho Holding Corp.*, 256 NY 374, 381-382, *supra*). Consequently, Supreme Court erred in failing to sustain the subpoenas insofar as they sought petitioners' testimony. We point out that petitioners may reassert their First Amendment challenge or other challenges to their testimony if and when questions they consider objectionable are put to them (*see, New York State Commn. on Govt. Integrity v Congel*, 156 AD2d 274, 280, *appeal dismissed* 75 NY2d 836). Likewise, our determination should not be construed as precluding respondents from renewing their requests for the precluded documents and materials if, as their inquiry advances, the need and justification for them crystallizes (*see, Federal Election Commn. v Larouche Campaign, supra*, at 235).

MIKOLL, J. P., CREW III, CASEY and PETERS, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted the motion and quashed the subpoenas insofar as they sought petitioners' testimony; motion denied to that extent; and, as so modified, affirmed.

### APPENDIX

1. The corporate books and records of New York Inaugural '95 Inc., and New York Transition '95 Inc. (each, individually, the "Corporation" and, together, the "Corporations"), including but not limited to, by-laws and minutes of all meetings of each Corporation, and names and addresses of all officers, directors and shareholders of each Corporation.

2. Records of all receipts of each Corporation including but not limited to, names and addresses of all individuals and/or entities which made contributions to such corporation or any of its officers, members or agents and the date such contributions were made.

3. Records of all transfers, loans, liabilities and expenditures made by each Corporation or any officers, members or agents on behalf of same, including, but not limited to, the names and addresses of all recipients of each Corporation's expenditures and the date and purpose of each such expenditure, and any records or documents related thereto.

4. Names and addresses of all employees of each Corporation and a schedule of dates and amounts of any payments made by such corporation thereto and all payroll records, tax filings, work rosters or other documents relating thereto.

5. Names and addresses of all consultants, contractors or other individuals or entities retained by each Corporation, or which received non-employee compensation therefrom, or which provided voluntary services thereto, and a schedule of dates and amounts of any payments made by each Corporation to any such consultants, contractors, individuals or entities and all contracts, tax filings and other documents relating thereto.

6. Records of any franchise tax, corporation income tax, payroll tax or other payments made by each Corporation to the State of New York.

7. Correspondence, memoranda, hand written notes, phone logs, electronic mail or any records or documents relating to fundraising activities of each Corporation, including, but not limited to, any fundraising invitations or solicitations.

8. Correspondence, memoranda, hand written notes, phone logs, electronic mail or any records or documents relating to a $25,000 contribution by New York Inaugural '95 Inc. to the N. Y. Republican State Committee on or about December 29, 1994.