[656 NYS2d 448]

In the Matter of MICHAEL URBACH, as Commissioner of the New York State Department of Taxation and Finance, Appellant, v HERMAN D. FARRELL, JR., as Chair of the New York State Assembly Committee on Ways and Means, Respondent, and FLEET BANK, Appellant.

Third Department, April 17, 1997

276

APPEARANCES OF COUNSEL

*Dennis C. Vacco, Attorney-General,* Albany *(Michael S. Buskus* and *Peter H. Schiff* of counsel), for Michael Urbach, appellant.

*Whiteman, Osterman & Hanna,* Albany *(Scott N. Fein* and *John J. Henry* of counsel), for Fleet Bank, appellant.

*Mark F. Glaser,* Albany *(Karen R. Kaufmann* and *June E. Eustis* of counsel), for respondent.

OPINION OF THE COURT

CARDONA, P. J.

Appeal from an order of the Supreme Court (Hughes, J.), entered July 26, 1996 in Albany County, which partially denied petitioner's motion pursuant to CPLR 2304 to, *inter alia,* quash a subpoena duces tecum.

In 1995, the Legislature approved a proposal permitting petitioner, the Commissioner of Taxation and Finance, to enter into a contract with respondent Fleet Bank known as PIT 2000, for the purpose of privatizing the processing of the State's personal income tax returns. Initially, Fleet leased office space for this purpose in the Albany area. In September 1995, the Governor reached an agreement with Fleet to expand PIT 2000 and relocate its operations to vacant IBM buildings near the City of Kingston, Ulster County. The proposal was approved by the Attorney-General but objections by the Comptroller prompted a revision of the plan from a lease-purchase of the IBM buildings by the State for Fleet to a direct lease between IBM and Fleet. This proposal was approved by the Comptroller on April 15, 1996.

On or about April 22, 1996, the State Assembly's Ways and Means Committee (hereinafter Committee) issued a legislative subpoena to petitioner directing his appearance at a hearing and seeking, *inter alia,* production of a complete copy of PIT 2000. Prior to issuing the subpoena, respondent Herman D.

Farrell, Jr., the Committee's Chair, informally requested a complete signed copy of PIT 2000. Citing the need to protect Fleet's trade secret status for portions of PIT 2000, which petitioner had granted under the State's Freedom of Information Law (hereinafter FOIL),[1] petitioner supplied only redacted versions of the contract to the Committee. After Farrell refused petitioner's request to withdraw the subpoena, petitioner commenced this special proceeding to quash or modify the subpoena. Supreme Court partially granted petitioner's request to quash the subpoena by dispensing with the need for him to personally appear at the public hearing but directed him to provide a complete copy of the PIT 2000 contract. Petitioner appeals.[2]

Petitioner argues that Supreme Court erred by failing to conduct an in camera review of his and Fleet's contentions concerning trade secrets. He further argues that the court improperly applied the Speech or Debate Clause of the NY Constitution, which provides that "[f]or any speech or debate in either house of the legislature, the members shall not be questioned in any other place" (NY Const, art III, § 11; *see, Matter of Straniere v Silver*, 218 AD2d 80, 82, *affd on opn below* 89 NY2d 825), by limiting its inquiry to a threshold determination of legitimate legislative activity. We disagree.

Initially, we note that the "Speech or Debate Clause serves to preserve the integrity of the Legislature by preventing other branches of government from interfering with legislators in the performance of their duties" (*People v Ohrenstein*, 77 NY2d 38, 54). To this end, the Court of Appeals has construed the Speech or Debate Clause of the NY Constitution as providing " 'at least as much protection as the immunity granted by the comparable provision of the Federal Constitution' " (*Matter of Straniere v Silver, supra*, at 82-83, quoting *People v Ohrenstein, supra*, at 53). Thus, New York's Speech or Debate Clause, like its Federal counterpart, "not only shields legislators from the consequences of litigation, but also protects them from the burden of defending themselves in court" (*Matter of Straniere v Silver, supra*, at 83), as long as their actions fall within the "sphere of legitimate legislative activity" (*Eastland v United States Servicemen's Fund*, 421 US 491, 503).

---

1. *See*, Public Officers Law § 87 (2) (d); § 89 (5); 20 NYCRR 2370.7.

2. Petitioner has not advanced before us the argument made at Supreme Court that the trade secret exemption of FOIL applies to legislative subpoenas. Accordingly, we deem this issue abandoned (*see, Williams v State of New York*, — AD2d —, —, 1997 NY Slip Op 00341 [3d Dept, Jan. 16, 1997]; *State of New York v Town of Oppenheim*, 184 AD2d 900, 901).

It has been clearly recognized that the power to investigate is an integral part of the legislative process, provided the investigation concerns "a subject on which 'legislation could be had' " (*supra*, at 506, quoting *McGrain v Daugherty*, 273 US 135, 177; *see, Matter of Joint Legislative Comm. [Teachers Union]*, 285 NY 1, 8; *People ex rel. McDonald v Keeler*, 99 NY 463, 485-487).[3] Both the United States Supreme Court and the Court of Appeals have recognized the subpoena power as a necessary incident of the power of inquiry[4] (*see, Eastland v United States Servicemen's Fund, supra*, at 504; *Watkins v United States*, 354 US 178, 187-188; *Matter of Joint Legislative Comm. [Teachers Union], supra*, at 8) and upheld the delegation of that power to "a committee acting * * * on behalf of one of the Houses" (*Eastland v United States Servicemen's Fund, supra*, at 505; *see, Matter of Joint Legislative Comm. [Teachers Union], supra*, at 9).

With these important principles in mind, it becomes clear that this Court's role is to determine whether the Committee's inquiry relates to a subject upon which legislation may be enacted and whether the information sought is material and relevant to that inquiry. In that regard, we note that the record indicates that at the time the subpoena was issued, the Committee was studying privatization of services and had a bill pending before it authorizing State agencies to enter into personal service contracts with private vendors where it would result in cost savings. Additionally, the 1996-1997 Executive Budget included a request for a legislative appropriation of $40.9 million (for banking services) to cover compensation of Fleet for its services under the expanded PIT 2000 contract. In our view, the issuance of the subpoena, which we find was intended to gather information about a subject on which legislation was contemplated, was an act within the sphere of legitimate legislative activity and, therefore, protected from further judicial review by the Speech or Debate Clause of the NY Constitution.

Turning to petitioner's contentions regarding executive privilege, we find that they are inappropriate for review because they were not raised before Supreme Court (*see, Matter of Kalkstein v DiNapoli*, 228 AD2d 28; *Agostino v Monticello Greenhouses*, 166 AD2d 471, 472).

---

3. Thus, the power to investigate does not include a " ' "general" power to inquire into private affairs' " (*Eastland v United States Servicemen's Fund, supra*, at 504, n 15, quoting *McGrain v Daugherty, supra*, at 173).

4. The subpoena power is also expressly conferred by statute upon legislative committees (*see*, Legislative Law § 62-a).

We find petitioner's remaining contentions unpersuasive.
MIKOLL, CREW III, WHITE and YESAWICH JR., JJ., concur.
Ordered that the order is affirmed, without costs.