[54 NYS3d 135]

In the Matter of EVERGREEN ASSOCIATION, INC., Doing Business as EXPECTANT MOTHER CARE/EMC FRONTLINE PREGNANCY CENTERS, Appellant, v ERIC T. SCHNEIDERMAN, as Attorney General of the State of New York, Respondent.

Second Department, June 21, 2017

**APPEARANCES OF COUNSEL**

*American Catholic Lawyers Association, Inc.*, Bronxville (*Christopher A. Ferrara* of counsel), for appellant.

*Eric T. Schneiderman, Attorney General*, New York City (*Richard P. Dearing* and *Karen W. Lin* of counsel), for respondent.

**OPINION OF THE COURT**

COHEN, J.

Introduction

The petitioner is a not-for-profit corporation committed to providing women experiencing unplanned pregnancies with

alternatives to abortion. To this end, the petitioner operates 12 crisis pregnancy centers in New York City where its largely volunteer staff gives pregnant women advice and emotional support aimed at encouraging them not to terminate their pregnancies and to keep their babies. Following a series of public hearings that examined the practices of centers such as those operated by the petitioner, the Attorney General of the State of New York launched an investigation into whether the petitioner was engaging in the unauthorized practice of medicine through conduct including locating its centers in medical buildings and making them look like medical offices, requesting the medical histories of its clients, performing pregnancy tests and sonograms, estimating gestational age, and evaluating fetal health. As part of his investigation, the Attorney General served the petitioner with an investigatory subpoena duces tecum demanding documents relating, inter alia, to the petitioner's corporate structure and facilities, the names, education, and credentials of all of its staff members, the materials it provides to clients, its medical services, equipment, and supplies, and the source of its funding. The petitioner countered by commencing this proceeding to quash the subpoena, claiming that it was a politically motivated attack on its First Amendment right to advocate pro-life views. For the reasons that follow, we hold that although the Attorney General was authorized to serve the subpoena and the materials sought are reasonably related to the investigation, the subpoena infringes on the First Amendment right of the petitioner and the petitioner's staff members to freedom of association, and is not sufficiently tailored to serve the compelling investigative purpose for which it was issued. Accordingly, we limit the scope of the subpoena to more narrowly tailor it to the Attorney General's legitimate investigatory needs.

Background

The petitioner, Evergreen Association, Inc., doing business as Expectant Mother Care/EMC Frontline Pregnancy Centers (hereinafter Evergreen), is a not-for-profit corporation which operates crisis pregnancy centers throughout New York City. Evergreen states that it is "dedicated to providing women, free of charge, with alternatives to abortion so that they may keep and love their babies." According to Evergreen, its centers rely heavily on unpaid volunteers, who provide women experiencing unplanned pregnancies with nonmedical advice, emotional support, and material assistance. The centers also provide a variety of pregnancy-related services, including pregnancy testing, ultrasounds, and sonograms.

Following a series of public hearings conducted in 2010 and 2011 into the practices of crisis pregnancy centers, the New York City Council found that Evergreen engaged in conduct which could constitute the unauthorized practice of medicine, including evaluating fetal health and requesting the medical history of clients. In October 2011, a televised news investigation of Evergreen's practices reported that Evergreen made diagnoses of gestational age and situated its centers in medical buildings making them appear like medical offices. In a radio interview that same year, the president of Evergreen refused to answer a question posed as to whether Evergreen employed medical personnel. As a result of these public allegations and investigations, the respondent, Eric T. Schneiderman, in his capacity as Attorney General of the State of New York, launched an investigation into Evergreen's conduct. According to the Attorney General, his independent investigation yielded additional information and evidence that Evergreen may be engaged in the unauthorized practice of medicine, including more proof that Evergreen facilities are located in medical buildings and designed like medical clinics, that Evergreen refers to its clients as patients and requests their medical information, and that Evergreen conducts pregnancy tests and makes diagnoses regarding pregnancy, ectopic pregnancy, and gestational age.

On May 17, 2013, the Attorney General served a subpoena duces tecum on Evergreen, requesting copies of documents relating to its operations for the preceding three-year period. The subpoena advised Evergreen that the Attorney General was conducting an investigation into possible violations of Executive Law § 63 (12) involving the unauthorized practice of medicine, and demanded 10 categories of documents relating, inter alia, to Evergreen's corporate structure and facilities, the education and credentials of its staff, the materials it provided to clients, its medical equipment and supplies, and the source of its funding. More specifically, the subpoena demanded:

"1. Documents sufficient to show [Evergreen's] organizational and corporate structure including the names and addresses of any parent or subsidiary corporation, certificates of incorporation and bylaws.

"2. Documents sufficient to identify the following information for each Center:

"(a) Name under which the Center operates or advertises;

"(b) Address of the Center;

"(c) Telephone number and email address used by the Center;

"(d) Hours during which the Center is open for seeing Clients;

"(e) Names of any medical or counseling facilities that share office space with or operate in the same building as the Center; and

"([f]) Services provided at the Center.

"3. Documents sufficient to identify the following information for every Staff person, organized by Center location:

"(a) Name of Staff person and service provided by such Staff person;

"(b) Date of hire, termination (if any) and schedule for such Staff;

"(c) Credentials, degrees and relevant education, including all professional licenses and certifications by any local, state or federal government agency; and

"(d) Staff hierarchies and reporting responsibilities for each Center.

"4. Documents sufficient to identify all policies, practices and procedures regarding responding to Clients' inquiries or providing services to Clients including, but not limited to, training materials, Staff handbooks, scripts, and other documents relied on to provide services to Clients, as well as any documents concerning referrals of Clients to medical, counseling, social or other services, including sonography or ultrasound, whether provided at any Center or other location.

"5. Documents sufficient to identify exemplars of all registration forms, documents, pamphlets and educational materials provided to Clients, whether to be kept or maintained by EMC or the Clients, and all forms completed by Staff regarding Clients.

"6. Documents sufficient to identify all entities or persons to whom EMC refers Clients including, but not limited to, agreements or contracts between EMC and with such entities or persons.

"7. Documents sufficient to show records for the purchase, donation, leasing, or other acquisition of any medical or medical-related supplies, equipment, or machines at any Center.

"8. Documents sufficient to show all advertisements and promotional literature, brochures and pamphlets that EMC provided or disseminated to the public in New York State, including but not limited to, websites, pamphlets, billboards, and radio, television or internet broadcasts.

"9. All documents concerning any grant or other monies received from a local, New York State, or federal governmental agency.

"10. Copies of all written complaints, formal or informal, concerning services provided or performed by EMC."

By letter dated June 8, 2013, Evergreen asked the Attorney General to withdraw the subpoena, contending that it threatened to violate Evergreen's constitutional rights, and was an overbroad and politically motivated "fishing expedition." By letter dated June 14, 2013, the Attorney General notified Evergreen of his refusal to withdraw the subpoena.

Evergreen responded by commencing this proceeding for a protective order and to quash the subpoena, arguing that the Attorney General did not have a factual basis or legal authority to issue the subpoena, and that the subpoena violated its First Amendment rights and the First Amendment rights of its staff and clients. With regard to the existence of a factual basis to issue the subpoena, Evergreen noted that the instant investigation mirrored a 2002 investigation in which the then Attorney General withdrew an almost identical subpoena because there was no actual complaint or evidence to justify its issuance. Evergreen also maintained that it did not engage in any commercial transactions and provided all services pro bono, relying heavily on unpaid volunteers. According to Evergreen, these volunteers provided only nonmedical advice, within the common knowledge of informed lay people, and contained pro-life opinions that any American had the right to express and that did not require a license to espouse. Evergreen further

submitted that Executive Law § 63 (12) did not authorize the Attorney General to issue the subpoena because that statute pertains solely to entities engaged in business transactions, and did not apply to Evergreen because it is a not-for-profit organization which does not engage in commercial transactions.

Addressing the impact of the subpoena, Evergreen alleged that the subpoena had caused great distress to members of its staff, who were concerned that their lawful First Amendment right to persuade women to give birth would be treated as a violation of the law. Moreover, the subpoena invaded the privacy of the staff and would dissuade others from volunteering for Evergreen. Evergreen also alleged that Bronx Lebanon Hospital, which had provided Evergreen access to its ultrasound facilities and a supervising doctor for over 10 years, severed its relationship with Evergreen when it was notified of the subpoena.

Evergreen maintained that since the subpoena impacted on the First Amendment rights of its staff and clients to free speech and association, it could not be enforced without a compelling state interest and was subjected to exacting scrutiny. Evergreen urged that the Attorney General's subpoena and investigation had a chilling effect on the First Amendment liberties of Evergreen, its volunteers, and the women who might seek its pro bono services, and concluded by arguing that it, its staff, and its clients would be irreparably harmed by the deprivation of their constitutional rights unless its petition was granted in its entirety. In the alternative, Evergreen requested that the subpoena be held unconstitutionally overbroad and limited in its terms.

In a memorandum of law in opposition to the petition, the Attorney General pointed out that as the chief legal officer of New York, he is charged with investigating and prosecuting violations of local, state, and federal law that threaten the well-being of New York residents. He explained that in this capacity, he is investigating whether Evergreen is engaged in the unauthorized practice of medicine in violation of Education Law articles 130 and 131. In furtherance of this investigation, he served the subpoena on Evergreen seeking specific information about Evergreen's facilities, staffing, training, and client referral practices and policies in order to determine the extent to which it provides, purports to provide, or represents itself as providing medical care and advice to women in New York. According to the Attorney General, the decision to issue the

subpoena was based on the results of his independent investigation, allegations made before the New York City Council, various news reports, and Evergreen's public statement. He also maintained that the subpoena had been "carefully tailored" to seek information related to the investigation, and that all of the information sought was relevant to the question of whether Evergreen was engaging in the unauthorized practice of medicine.

The Attorney General disputed Evergreen's claim that Executive Law § 63 (12) did not authorize issuance of the subpoena because of Evergreen's status as a nonprofit, noncommercial entity. To the contrary, he argued that the statute applies to nonprofit enterprises that may be providing fraudulent or illegal services to the public, and such nonprofit organizations may not use that status as a shield from an inquiry into possible fraud or illegality.

The Attorney General further argued that the subpoena imposed no undue burden on First Amendment activity. Rather, the subpoena sought information that Evergreen made available to the public and which it willingly distributed, and did not regulate, interfere with, influence, or suppress the ability of Evergreen and its staff to express their views or associate with anyone they choose. In any event, the subpoena is proper because it was designed to ensure that Evergreen is not engaged in the unauthorized practice of medicine or otherwise promulgating fraudulent or illegal speech in furtherance of such conduct. Since the First Amendment does not protect fraudulent or illegal speech, his efforts to determine, via the subpoena, whether illegal activity is taking place are permissible under the First Amendment.

The Attorney General also contended that even if the subpoena is subject to a strict scrutiny standard of review, the subpoena is permissible because it protects a compelling state interest and is narrowly tailored to serve that purpose. Here, the investigation is related to a compelling state interest because there is an adequate factual basis for investigating whether health and safety have been endangered by Evergreen.

The Attorney General additionally submitted an attorney affirmation under seal for in camera review regarding his investigation, which included information obtained as a result of undercover visits to Evergreen's centers.

In reply, Evergreen contended that the Attorney General had failed to sustain his burden of coming forward with a sufficient

factual basis for issuance of the subpoena, especially in this case, where the subpoena implicates the First Amendment, and the Attorney General's burden is significantly higher. Moreover, most of the information demanded by the subpoena is not substantially related to any compelling state interest, and, even if the Attorney General had a sufficient factual predicate, the subpoena would still have to be limited to discovery concerning the particular activities alleged to constitute unlicensed medical practice and the individuals alleged to have engaged in it. Evergreen concluded by submitting that the Attorney General's broad and sweeping inquiry into its records, bylaws, certificates of incorporation, staff handbooks, educational materials, website, and private contracts is not substantially related to any demonstrated threat to the state interest in prohibiting the practice of medicine without a license.

In an order entered December 19, 2013, the Supreme Court, inter alia, denied the petition. The court found that the Attorney General had statutory authority to issue the subpoena, and had demonstrated a factual basis for its issuance through the submission of the in camera affirmation relating to the investigation of Evergreen's centers, and testimony presented at the City Council hearings. The court rejected Evergreen's First Amendment claims, finding that Evergreen had not demonstrated any way in which the First Amendment right of its staff to freedom of association would be threatened if required to comply with the subpoena, and that the Attorney General had a compelling interest in preventing fraudulent or illegal acts, including practicing medicine without a license. The court further determined that the documents sought by the subpoena were substantially related to the investigation into the possible unauthorized practice of medicine, and that Evergreen had made no showing that the documents are readily available from other sources. Evergreen appeals.

Analysis

The requirements for the issuance of an investigatory subpoena duces tecum are "(1) that the issuing agency has authority to engage in the investigation and issue the subpoena, (2) that there is an authentic factual basis to warrant the investigation, and (3) that the evidence sought is reasonably related to the subject of the inquiry" (*Matter of Abrams v Thruway Food Mkt. & Shopping Ctr.*, 147 AD2d 143, 146 [1989], citing *Matter of Levin v Murawski*, 59 NY2d 35 [1983], and *Matter of A'Hearn v Committee on Unlawful Practice of Law of N.Y. County Lawyers' Assn.*, 23 NY2d 916 [1969]).

■ At the outset, we hold that the Attorney General was authorized to serve the subpoena on Evergreen pursuant to Executive Law § 63 (12) in order to take proof and make a determination as to whether Evergreen is engaged in repeated fraudulent or illegal acts or otherwise demonstrated persistent fraud or illegality in conducting its business. Executive Law § 63 (12) authorizes the Attorney General to seek an injunction "[w]henever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business." The statute further provides that "[i]n connection with any such application, the attorney general is authorized to take proof and make a determination of the relevant facts and to issue subpoenas in accordance with the civil practice law and rules." If Evergreen is engaged in the unauthorized practice of medicine which endangers members of the public, then it is engaged in illegal acts "in the carrying on, conducting or transaction of business," regardless of whether it is doing so for a commercial purpose or profiting financially. Notably, Executive Law § 63 (12) makes no reference to profiting from the illegal conduct, or to commercial transactions. Accordingly, we reject Evergreen's contention that Executive Law § 63 (12) is inapplicable because it is a nonprofit corporation that is not operated for commercial gain.

■ Further, the Supreme Court properly found that the Attorney General had an adequate factual basis to support the issuance of the subpoena. The information forming the factual basis for the issuance of an investigatory subpoena "need not be sufficient to establish fraud or illegality, or even provide probable cause, as long as the futility of the process is not inevitable or obvious" (*Matter of Hogan v Cuomo*, 67 AD3d 1144, 1146 [2009]; *see Myerson v Lentini Bros. Moving & Stor. Co.*, 33 NY2d 250, 256-257 [1973]). To satisfy this requirement, a state agency is not obligated to establish "a strong and probative basis for investigation, let alone probable cause as that term has been used in the criminal law" (*Myerson v Lentini Bros. Moving & Stor. Co.*, 33 NY2d at 258; *see Matter of American Dental Coop. v Attorney-General of State of N.Y.*, 127 AD2d 274, 280 [1987]). Rather, "[a]ll that is required is that the scope of the subpoena and the basis for its issuance be more than isolated or rare complaints . . . lest the powers of investigation . . . become potentially instruments of abuse and harassment" (*Myerson v Lentini Bros. Moving & Stor. Co.*, 33 NY2d at

258). "Moreover, in evaluating the Attorney-General's justification for the issuance of a subpoena, there is a presumption that he is acting in good faith" (*Matter of American Dental Coop. v Attorney-General of State of N.Y.*, 127 AD2d at 280; *see Matter of Abrams v Thruway Food Mkt. & Shopping Ctr.*, 147 AD2d at 147). Here, the materials submitted by the Attorney General in opposition to the petition included transcripts of testimony from the public hearings conducted by the City Council, and an affirmation submitted under seal for in camera review which detailed the evidence uncovered by the Attorney General during his preliminary investigation. The sealed affirmation confirmed that during his preliminary investigation, the Attorney General adduced evidence that Evergreen's centers were set up to look like medical offices, staff members were dressed in scrubs or lab coats, a medical history was taken from clients, diagnoses of pregnancies, ectopic pregnancies, and gestational age were made, and medical advice was given, including false advice. These submissions amply demonstrate that a legitimate factual basis existed for the Attorney General to conduct his investigation and issue the subpoena to determine whether Evergreen is engaged in the unauthorized practice of medicine (*see Matter of Hogan v Cuomo*, 67 AD3d at 1146-1147; *Matter of Roemer v Cuomo*, 67 AD3d 1169, 1171-1172 [2009]; *Matter of Chassin v Helaire Nursing Agency*, 211 AD2d 581 [1995]).

█ Nor should the subpoena be quashed on the ground that the documents sought by the Attorney General are not reasonably related to the subject of the investigation. An application to quash an investigatory subpoena issued by the Attorney General should be granted where the information sought is "utterly irrelevant to any proper inquiry" (*Anheuser-Busch, Inc. v Abrams*, 71 NY2d 327, 331-332 [1988]). In defending his inquiry, the Attorney General "must show only that the materials sought bear 'a reasonable relation to the subject matter under investigation and to the public purpose to be achieved'" (*id.* at 332, quoting *Carlisle v Bennett*, 268 NY 212, 217 [1935]; *see Virag v Hynes*, 54 NY2d 437, 442 [1981]; *Matter of Goldin v Greenberg*, 49 NY2d 566, 571-572 [1980]; *Hyatt v State of Cal. Franchise Tax Bd.*, 105 AD3d 186, 202 [2013]).

Here, the documents sought by the Attorney General are reasonably related to the subject of his inquiry into whether Evergreen may be practicing medicine without a license and misleading women into believing that they are being seen by a

medical doctor (*see Matter of Levin v Murawski*, 59 NY2d at 41). Pursuant to Education Law § 6522, "[o]nly a person licensed or otherwise authorized under this article shall practice medicine or use the title 'physician,'" and pursuant to Education Law § 6521, "[t]he practice of the profession of medicine is defined as diagnosing, treating, operating or prescribing for any human disease, pain, injury, deformity or physical condition." The documents sought, which include documents providing information about the services provided at Evergreen's centers, the education and credentials of Evergreen's staff members, exemplars of its client registration forms, and its acquisition of medical supplies, equipment, and machines, are potentially relevant to the investigation into whether Evergreen is engaged in the unlicensed practice of medicine. Moreover, the fact that the subpoena requires production of a substantial number of documents does not render it invalid, overbroad, or unduly burdensome (*see All-Waste Sys. v Abrams*, 155 AD2d 401 [1989]). Although Evergreen contends that the subpoena is a "massively intrusive inquisition" into its records, "'[relevancy], and not quantity, is the test of the validity of a subpoena'" (*Matter of American Dental Coop. v Attorney-General of State of N.Y.*, 127 AD2d at 282-283, quoting *Matter of Minuteman Research v Lefkowitz*, 69 Misc 2d 330, 331 [Sup Ct, NY County 1972]). Accordingly, there is no basis to quash the subpoena on the grounds that the documents sought are irrelevant or that the subpoena is overbroad in scope.

However, this does not end our analysis because Evergreen additionally seeks to quash the subpoena on First Amendment grounds. The public debate over the morality of abortion continually rages on, with each side finding the position of the other untenable (*see Whole Woman's Health v Hellerstedt*, 579 US —, 136 S Ct 2292 [June 27, 2016]). Evergreen argues that the subpoena violates the First Amendment rights of its staff and others seeking to be associated with it. As an ideologically driven organization with strongly held views on this controversial issue, Evergreen expressly declares in its petition that the crisis pregnancy centers it operates in New York City are "dedicated to providing women, free of charge, with alternatives to abortion so that they may keep and love their babies." Evergreen contends that the subpoena, in its entirety, violates the First Amendment by chilling its right to oppose abortion in accordance with religious views, to communicate that opposi-

tion, and to attempt to persuade others toward that point of view. Evergreen further maintains that the right to associate freely and anonymously with others who share that point of view is abridged by compliance with the subject subpoena.

"Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association," and it is "immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters" (*NAACP v Alabama ex rel. Patterson*, 357 US 449, 460 [1958]). Our cherished First Amendment freedoms permit a diversity of thought that remains at the core of our intellectual richness and strengthened by an uninhibited competition of ideas.

There is a danger that subpoenas may be used to intimidate or harass speakers who espouse views with which the government may disagree, and "[a] government investigation should not be allowed to trespass on the principle that 'debate on public issues should be uninhibited, robust, and wide-open' " (*Matter of Parkhouse v Stringer*, 12 NY3d 660, 668 [2009], quoting *New York Times Co. v Sullivan*, 376 US 254, 270 [1964]).

■ Here, since Evergreen sought, in part, to quash the subpoena on First Amendment grounds, Evergreen had the initial threshold burden to make at least some showing that production of the information sought would impair its First Amendment rights (*see Matter of Full Gospel Tabernacle v Attorney-General of State of N.Y.*, 142 AD2d 489, 493 [1988]; *St. German of Alaska E. Orthodox Catholic Church v United States*, 653 F Supp 1342, 1346-1347 [SD NY 1987]; *see also Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 72 NY2d 307 [1988]). Although the Supreme Court concluded that Evergreen had not demonstrated any way in which the First Amendment right of its staff members to freedom of association would be threatened if required to comply with the subpoena, Evergreen specifically pointed to the fact that the subpoena had already negatively impacted its relationship with Bronx Lebanon Hospital and contended that it will have a chilling effect on its associations with its employees and potential clients. We deem this sufficient under the facts presented to meet Evergreen's initial burden.

Thus, the burden shifted to the Attorney General to show that the subpoena substantially related to a compelling governmental interest (*see Brown v Socialist Workers '74 Cam-*

*paign Comm. [Ohio]*, 459 US 87, 91-92 [1982]; *Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 72 NY2d at 312-313; *Local 1814, Intl. Longshoremen's Assn., AFL-CIO v Waterfront Commn. of N.Y. Harbor*, 667 F2d 267, 273 [2d Cir 1981]). In this regard, the Supreme Court correctly noted that the assertion of First Amendment claims by Evergreen triggers more careful scrutiny. The court also correctly recognized that the Attorney General's office asserted a compelling state interest in preventing and prohibiting fraudulent or illegal acts, including practicing medicine without a license.

However, in order to pass constitutional muster, the governmental action must be narrowly tailored to serve the compelling state interest. Indeed, even where, as here, the Attorney General's purpose in serving the subpoena is found to "be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved" (*Shelton v Tucker*, 364 US 479, 488 [1960]).

There is no question that the Attorney General's investigation is of the utmost importance to protecting the health and safety of women. However, it is equally important that such investigation be carried out with respect and sensitivity to the constitutional rights of those involved. While the subpoena seeks documents that generally bear a reasonable relation to the subject matter of the Attorney General's investigation, the demands are not narrowly tailored to require production of only those documents directly related to Evergreen's alleged unauthorized practice of medicine. Thus, we limit in scope the demands set forth in the subpoena to require the disclosure of only those documents that are substantially related to the Attorney General's legitimate need to gather evidence to determine whether Evergreen has engaged in the unauthorized practice of medicine and which do not unnecessarily intrude on Evergreen's First Amendment right to freedom of association.

More specifically, demand 1, which seeks documents sufficient to show Evergreen's "organizational and corporate structure including the names and addresses of any parent or subsidiary corporation, certificates of incorporation and bylaws," must be limited by requiring the disclosure of only those portions of such documents which pertain to the potential provision of medical or medical-related services. Demand 2 must be limited by requiring the disclosure of information and

documents in response to subdivision (e), and, in response to subdivision (f), the disclosure of information and documents pertaining only to any medical or medical-related services provided at its centers. Demand 3, which seeks information including the names, credentials, and education of every staff member at each of Evergreen's centers, must be limited by requiring the disclosure of such information only with respect to those staff members who provide medical or medical-related services. Demand 4, which seeks documents including training materials, staff handbooks, and documents concerning referrals of clients to medical, counseling, social or other services, must be limited by requiring the disclosure of only those portions of such documents which pertain to the provision of medical or medical-related services and referrals of clients for medical and medical-related services. Demand 5, which seeks production of exemplars of all registration forms, documents, pamphlets and educational materials provided to clients, must be limited by requiring the disclosure of only those portions of such forms, documents, pamphlets and educational materials as seek medical information from clients and/or pertain to the provision of medical or medical-related services. Demand 6, which seeks documents "sufficient to identify all entities or persons to whom" Evergreen refers clients, must be limited to require the disclosure of documents sufficient to identify all entitles and persons to whom Evergreen refers clients for medical or medical-related services. Demand 7 must be limited by requiring the disclosure of documents sufficient to show records only for the purchase and leasing of any medical or medical-related supplies, equipment, or machines at Evergreen's centers. Demands 8 and 9 must be quashed in their entirety because they seek documents that infringe on Evergreen's First Amendment rights, including materials disseminated on websites, radio, and television and Internet broadcasts, and documents relating to the sources of Evergreen's funding, which is not directly related to Evergreen's alleged unauthorized practice of medicine. Finally, demand 10, which seeks "[c]opies of all written complaints, formal or informal, concerning services provided or performed" by Evergreen, must be limited by requiring the disclosure of only such complaints which pertain to the provision of medical or medical-related services.

To assist in ensuring proper compliance with the subpoena, we direct that Evergreen produce all documents necessary to

comply with demands 1, 2, 3, 4, 5, 6, 7, and 10 as originally formulated, for an in camera inspection by the Supreme Court, which must then determine which documents pertain to medical or medical-related services, or to medical or medical-related supplies, equipment, or machines. In determining which documents pertain to medical or medical-related services, the Supreme Court must be guided by the definition set forth in Education Law § 6521. Upon completion of the in camera inspection, the Supreme Court must determine which documents, or parts thereof, must be disclosed to the Attorney General in compliance with demands 1, 2, 3, 4, 5, 6, 7, and 10 as limited herein.

Accordingly, the order is modified, on the law, (1) by deleting the provision thereof denying that branch of the petition which was to quash demands 1, 2, 3, 4, 5, 6, 7, and 10, and substituting therefor a provision granting that branch of the petition to the extent of directing Evergreen to produce all documents necessary to comply with those demands, as originally formulated, for an in camera inspection, and otherwise holding that branch of the petition in abeyance pending determination of which of those demands, or parts thereof, if any, shall be quashed, and (2) by deleting the provision thereof denying that branch of the petition which was to quash demands 8 and 9, and substituting therefor a provision granting that branch of the petition; as so modified, the order is affirmed insofar as appealed from, and the matter is remitted to the Supreme Court, Westchester County, for an in camera inspection of the documents required to be produced in compliance with demands 1, 2, 3, 4, 5, 6, 7, and 10, as originally formulated, and a determination of which documents, or parts thereof, if any, shall be disclosed to the Attorney General in compliance with demands 1, 2, 3, 4, 5, 6, 7, and 10 as limited herein, and thereafter, a determination of which of those demands, or parts thereof, if any, shall be quashed.

LEVENTHAL, J.P., DUFFY and LASALLE, JJ., concur.

Ordered that the order is modified, on the law, (1) by deleting the provision thereof denying that branch of the petition which was to quash demands 1, 2, 3, 4, 5, 6, 7, and 10, and substituting therefor a provision granting that branch of the petition to the extent of directing Evergreen to produce all documents necessary to comply with those demands, as originally formulated, for an in camera inspection, and otherwise holding that branch of the petition in abeyance pend-

ing determination of which of those demands, or parts thereof, if any, shall be quashed, and (2) by deleting the provision thereof denying that branch of the petition which was to quash demands 8 and 9, and substituting therefor a provision granting that branch of the petition; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Westchester County, for an in camera inspection of the documents required to be produced in compliance with demands 1, 2, 3, 4, 5, 6, 7, and 10, as originally formulated, and a determination of which documents, or parts thereof, if any, shall be disclosed to the Attorney General in compliance with demands 1, 2, 3, 4, 5, 6, 7, and 10 as limited herein, and thereafter, a determination of which of those demands, or parts thereof, if any, shall be quashed.