Matter of New York State Senate Republican Campaign Comm. v Sugarman (2018 NY Slip Op 07218)





Matter of New York State Senate Republican Campaign Comm. v Sugarman


2018 NY Slip Op 07218


Decided on October 25, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 25, 2018

526007

[*1]In the Matter of NEW YORK STATE SENATE REPUBLICAN CAMPAIGN COMMITTEE et al., Appellants,
v
RISA S. SUGARMAN, as Chief Enforcement Counsel of the Division of Election Law Enforcement of the New York State Board of Elections, Respondent.

Calendar Date: September 13, 2018

Before: Egan Jr., J.P., Clark, Aarons and Pritzker, JJ.


Covington & Burling LLP, New York City (Robert K. Kelner of Covington & Burling LLP, Washington, DC, of counsel, admitted pro hac vice), for appellants.
Risa S. Sugarman, New York State Board of Elections, Albany (John M. Tuppen of counsel), for respondent.
Barbara D. Underwood, Attorney General, Albany (Jennifer L. Clark of counsel), in her capacity under Executive Law § 71.



MEMORANDUM AND ORDER
Egan Jr., J.P.
Appeal from that part of an order of the Supreme Court (McDonough, J.), entered August 28, 2017 in Albany County, which denied petitioners' application pursuant to CPLR 2304 and 3103 to quash a subpoena duces tecum and for an order of protection, and granted respondent's motion to dismiss the petition.
Petitioner New York State Senate Republican Campaign Committee (hereinafter the Campaign Committee) is the "campaign arm of the New York State Senate Republicans" whose purpose is to promote the election of Republican candidates to that legislative body. Petitioner New York State Senate Republican Campaign Housekeeping Committee (hereinafter the Housekeeping Committee) is not a separate legal entity from the Campaign Committee but, rather, an administrative "housekeeping account" used by the Campaign Committee to account for those receipts and expenditures involving the maintenance of a permanent headquarters, staff and other "ordinary activities" separate and distinct from promoting specific candidates to elected office. Respondent is the chief enforcement counsel of the State Board of Elections and has the sole authority within the State Board to investigate alleged campaign finance violations pursuant to Election Law article 14 as well as "other statutes governing campaigns, elections and related procedures" (Election Law § 3-104 [1] [b]).
In March 2017, pursuant to Election Law §§ 3-102 (5) and
3-104 (3), respondent issued two identical subpoenas duces tecum to the Campaign Committee and the Housekeeping Committee, respectively, seeking documents pertaining to those vendors who received payments from both committees between 2014 and 2016. In reply, petitioners made a request for respondent to withdraw the subject subpoenas, but that request was denied. Petitioners then commenced this special proceeding pursuant to CPLR 2304 and 3103 for an order quashing the subpoenas and seeking a protective order with regard thereto. Respondent thereafter moved to dismiss the petition and for an order directing petitioners to comply with the subpoenas [FN1]. Following oral argument, Supreme Court, among other things, granted respondent's motion to dismiss the petition and ordered petitioners to comply with the subpoenas within 45 days of its order. Petitioners now appeal.
As a threshold matter, petitioners argue that respondent's broad statutory authority to conduct investigations and issue subpoenas pursuant to the Election Law, without having to obtain the consent of a majority of the Commissioners of the State Board, violates NY Constitution, article II, § 8 because it permits respondent to unilaterally regulate and affect the State Board, upsetting the equal bipartisan representation requirement provided for in said provision [FN2]. We disagree. "Legislative acts . . . enjoy a strong presumption of constitutionality, and parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity beyond a reasonable doubt" (New York State United Teachers v State of New York, 140 AD3d 90, 95 [2016] [internal quotation marks, brackets, ellipsis and citations omitted], appeal dismissed 28 NY3d 978 [2016], lv denied 28 NY3d 915 [2017]; see Overstock.com, Inc. v New York State Dept. of Taxation & Fin., 20 NY3d 586, 593 [2013], cert denied 571 US 1071 [2013]; LaValle v Hayden, 98 NY2d 155, 161 [2002]). Here, a plain language reading of NY Constitution, article II, § 8 establishes that, by its very terms, it applies only to those laws "creating, regulating or affecting boards or officers charged with the duty of registering voters, or of distributing ballots to voters, or of receiving, recording or counting votes at elections" (see Clark v Cuomo, 66 NY2d 185, 191 [1985]). The Court of Appeals has recognized that, where, as here, "the personnel who implement [the law] do not register voters, distribute ballots or receive, record or count votes at elections," the bipartisan representation requirement set forth in NY Constitution, article II, § 8, is inapplicable (id.). Notably, respondent's statutory powers and duties do not include registering voters, distributing ballots or receiving, recording or counting votes at an election (see Election Law § 3-104 [1] [b]). Accordingly, we find that petitioners have failed to establish, beyond a reasonable doubt, that the investigatory authority statutorily granted to respondent by the Election Law is unconstitutional.
We find petitioners' contention that respondent failed to articulate an adequate factual basis for issuance of the subject subpoenas to be unavailing. An agency may issue a subpoena duces tecum so long it has the proper authority and a sufficient factual basis for its investigation and the evidence sought is reasonably related to the subject of the inquiry (see Matter of A'Hearn v Committee on Unlawful Practice of Law of N.Y. County Lawyers' Assn., 23 NY2d 916, 918 [1969], cert denied 395 US 959 [1969]; Matter of Roemer v Cuomo, 67 AD3d 1169, 1171 [2009]; Matter of Sachs v New York State Racing & Wagering Bd., 227 AD2d 802, 803 [1996]). "An application to quash a subpoena should be granted only where the futility of the process to uncover anything legitimate is inevitable or obvious or where the information sought is utterly irrelevant to any proper inquiry" (Anheuser-Busch, Inc. v Abrams, 71 NY2d 327, 331-332 [1988] [internal quotation marks, brackets and citations omitted]; accord Matter of Hogan v Cuomo, 67 AD3d 1144, 1145 [2009]; see Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250, 256-257 [1973]). "The person challenging a subpoena bears the burden of demonstrating a lack of authority, relevancy or factual basis for its issuance" (Matter of Hogan v Cuomo, 67 AD3d at 1145; see Matter of A'Hearn v Committee on Unlawful Practice of Law of N.Y. County Lawyers' [*2]Assn., 23 NY2d at 918 [citation omitted]; Matter of Abbruzzese v New York Temporary State Commn. on Lobbying, 43 AD3d 518, 519 [2007]).
Here, there is no dispute that the Legislature conferred respondent with the statutory authority to investigate alleged violations of Election Law article 14 and issue subpoenas in support thereof (see Election Law §§ 3-102 [5]; 3-104 [3]). To that end, respondent's investigation is premised on Election Law § 14-124 (3), which exempts from "[t]he contribution and receipt limits of [Election Law article 14]" any "monies received and expenditures made by a party committee or constituted committee to maintain a permanent headquarters and staff and carry on ordinary activities which are not for the express purpose of promoting the candidacy of specific candidates." Thus, there is no limit to the amount of money that a party committee can receive and expend in support of these enumerated "housekeeping" functions, so long as said funds are not spent in promotion of a specific candidate for elected office. Respondent has indicated that she is investigating petitioners to determine whether they violated Election Law § 14-124 (3) during the election cycles between 2014 and 2016 by using certain vendors-in-common to purchase products and services for the express purpose of promoting the candidacy of specific candidates; it is presumed that respondent acted in good faith in issuing the subject subpoenas for that purpose (see Anheuser-Busch, Inc. v Abrams, 71 NY2d at 332; Matter of Hogan v Cuomo, 67 AD3d at 1145-1146; Matter of American Dental Coop. v Attorney-General of State of N.Y., 127 AD2d 274, 280 [1987]). Further, the information relied upon by respondent for the issuance of the subject subpoenas need not be sufficient to prove any illegality, or even probable cause that a violation of the Election Law has occurred, so long as the subject inquiry is not "utterly irrelevant to any proper inquiry" or that its "futility . . . to uncover anything legitimate is inevitable or obvious" (Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d at 257 [internal quotation marks and citations omitted]; see Matter of Hogan v Cuomo, 67 AD3d at 1146).
In support of her motion to dismiss, respondent submitted voluminous financial documents which, in her opinion, "strongly suggest that the Housekeeping Committee is expending money for the express purpose of promoting the candidacy of specific candidates" in contravention of Election Law § 14-124 (3). Respondent alleges that the Housekeeping Committee has used its funds to, among other things, pay for a specific fundraising event expressly promoting a specific candidate, pay for campaign materials attacking the opponents of specific candidates supported by the Campaign Committee, pay for certain vendor invoices that referenced specific candidate campaigns supported by the Campaign Committee and pay invoices that were billed to the Campaign Committee. Respondent also cites to the timing of certain payments made by the Housekeeping Committee to certain vendors-in-common, alleging that such payments spiked in the months immediately preceding Senate elections. Although petitioners dispute respondent's interpretation of the statute as to whether many of these expenditures constitute violations of Election Law § 14-124 (3), on the record before us, we are not called upon to interpret what constitutes an appropriate housekeeping expenditure pursuant to this statute; rather, we need only determine whether respondent has provided an adequate factual basis for issuance of the subject subpoenas. In our view, the documentation provided in support of respondent's motion provide an adequate factual basis sufficient for respondent to issue the subpoenas to investigate, and the evidence sought is reasonably related to respondent's inquiry into whether improper payments were made by the Housekeeping Committee to certain vendors-in-common with the Campaign Committee for the express purpose of promoting specific candidates to office in violation of the Election Law (see Anheuser-Busch, Inc. v Abrams, 71 NY2d at 332; Matter of Hogan v Cuomo, 67 AD3d at 1146; Matter of Abbruzzese v New York Temporary State Commn. on Lobbying, 43 AD3d at 519; see also Matter of Evergreen Assn., Inc. v Schneiderman, 153 AD3d 87, 98 [2017]).
Petitioners further contend that production of the information requested in the subpoenas would impermissibly tread on their First Amendment rights of political expression and association. We do find that certain documents and materials requested by respondent — such as petitioners' polling data, the issues that they have advocated for or against and petitioners' communications with candidates and the candidates' authorized committees, employees and [*3]agents — do infringe upon petitioners' First Amendment rights of political expression and association (see Matter of Kalkstein v DiNapoli, 228 AD2d 28, 31 [1997], appeal dismissed and lv denied 89 NY2d 1008 [1997]; see also Eu v San Francisco County Democratic Cent. Comm., 489 US 214, 231 [1989]; Buckley v Valeo, 424 US 1, 64 [1976]). However, even a significant infringement on petitioners' First Amendment rights may be sustained, so long as respondent has sufficiently established that issuance of the subpoenas is related to a compelling governmental interest (see Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO, 72 NY2d 307, 312 [1988], cert denied 488 US 966 [1988]; Matter of Kalkstein v DiNapoli, 228 AD2d at 31; Matter of Full Gospel Tabernacle v Attorney-General of State of N.Y., 142 AD2d 489, 493 [1988]). As relevant here, it is well settled that the government has a compelling interest in "ensur[ing] fair elections and . . . deter[ring] corruption in the elective process by exposure of improper contributions" (Matter of Citizens Helping Achieve New Growth & Empl.—N.Y. v New York State Bd. of Elections, 201 AD2d 245, 248 [1994], lv denied 84 NY2d 811 [1994]; see Randall v Sorrell, 548 US 230, 243-244 [2006]; Buckley v Valeo, 424 US at 27-29). Accordingly, given respondent's position as chief enforcement counsel for the State Board and her role as the sole authority within the State Board to investigate alleged campaign finance violations pursuant to Election Law article 14, we find that issuance of the subject subpoenas is certainly substantially related to effectuating this compelling government interest.
Nevertheless, in order to withstand constitutional scrutiny, respondent must also establish that the subpoenas are narrowly tailored to effectuate said governmental interest, i.e., that the subpoenas seek only production of those documents and materials directly related to respondent's inquiry into whether Housekeeping Committee funds were used to promote specific candidates for elected office in violation of Election Law § 14-124 (3). Here, respondent's subpoenas requested 38 distinct categories of documents over a three-year period commencing on January 1, 2014 and ending on December 31, 2016. Although these document demands were appropriately limited in time and the majority sufficiently limited in scope, certain demands capture materials that are "extraneous to the central purposes of [respondent's] inquiry" (Matter of Kalkstein v DiNapoli, 228 AD2d at 30) and/or unnecessarily infringe on petitioners' First Amendment rights of political expression and association (see Matter of Evergreen Assn., Inc. v Schneiderman, 153 AD3d at 101)[FN3]. Accordingly, upon our independent review of the subpoenas duces tecum, we find that item Nos. 1, 16, 23, 25, 26, 27, 28, 29, 34, 35, 36, 37 and 38 must be quashed.
Clark, Aarons and Pritzker, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted respondent's motion to dismiss in its entirety; motion denied to the extent that item Nos. 1, 16, 23, 25, 26, 27, 28, 29, 34, 35, 36, 37 and 38 of the subpoenas duces tecum are quashed, petition granted to said extent and an order of protection granted in this regard; and, as so modified, affirmed.



Footnotes

Footnote 1: Respondent also separately served on petitioners a notice to admit, seeking admissions regarding certain allegations related to the subpoenas. Petitioners thereafter sought a protective order with regard to same, which Supreme Court ultimately granted. Respondent has not filed a cross-appeal challenging Supreme Court's determination in this regard.

Footnote 2:

Footnote 3: By way of example, item No. 1 sought a roster of petitioners' staff, officers, agents and certain other individuals; item No. 23 sought the issues advocated for and against by petitioners; and item No. 25 sought polls, poll results and polling data.